**SOUKOUP,  Plaintiff Appellant, v. THE REPUBLIC STEEL CORPORATION, Defendant Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20061.   Decided February 4, 1946.

162

Friebolin & Byers, Cleveland, for plaintiff appellant.
Jones, Day, Cockley & Reavis, Cleveland for defendant appellee.

## OPINION

By SKEEL, P. J.

The plaintiff, who was a part owner of a residence located at 4623 Barkwell Avenue in the City of Cleveland, brings this action against the defendant seeking damages for a nuisance which he claims was caused by the defendant in the operation of seventy-five coke ovens in the immediate vicinity of his residence.

The plaintiff purchased the property in June, 1942 and since then has, together with his wife, occupied it as his place of residence. The property is located in a district zoned for residence purposes. The part of Barkwell Avenue upon which plaintiff's property is situated, runs southwest from Broadway

to the top of the bank where the Cuyahoga Valley begins and is the first street intersecting Broadway toward downtown Cleveland from the East 55th Street intersection. The Cuyahoga Valley is zoned for heavy manufacturing and the zoning ordinance provides that among the businesses that may be carried on in the district is the operation of coke ovens. From the foregoing it is clear that plaintiff's residence, although it is in a residential zone, is in fact at the very edge of a part of the city which is devoted to industrial use.

The Defense Plant Corporation of America, early in 1943, acquired a number of the residence properties across the street from plaintiff, beginning at the end of the street and caused them to be demolished and then cut away the bank so that such property became the slope of bank running from the southeast side of Barkwell Avenue down to the floor of the Cuyahoga Valley. The Defense Plant Corporation, to increase the production of steel for war purposes, entered into a contract with the defendant, The Republic Steel Corporation, to construct seventy-five coke ovens located on the floor of the Valley just beyond the bank above described, and upon their completion leased them to the Republic Steel Corporation to be operated in connection with the manufacture of iron and steel as a part of the war effort.

The coke ovens of modern design, were constructed by The Koppers Company of Pittsburg, Pa., a company specializing in that kind of construction.

The plaintiff by the first cause of action of his petition, alleges that defendant has for a great many years been engaged in the manufacture of iron and steel products and has during that time maintained and operated in the vicinity of plaintiff's residence its Cleveland plant "at which the defendant makes coke, iron and steel, and engages in many related activities." That on or about October, 1943, the defendant for the first time put into operation the new coke oven installations above described. That in their operation the defendant wrongfully caused and permitted frequent violent explosions and caused and permitted the creation and discharge into the surrounding atmosphere of noisesome, noxious, and poisonous fumes and gases, dense smoke and clouds of dust, dirt and grime, steam and vapors, all creating a nuisance of such character as to endanger the health of persons living as close to such coke oven installations as this plaintiff * * * *" and that such conditions cause damage to his property and endangered the health of himself and his family.

In his second cause of action the plaintiff alleges that in

the operation of said coke oven installations as described in the first cause of action, the defendant is in violation of certain ordinances of the City of Cleveland which provide in part as follows:

"Sec. 1715-5. No new plant or plants, or reconstruction of any existing plant or plants, for producing power and heat, or either of them, or any new or reconstructed chimney, connected with fuel burning equipment, shall be erected, installed or operated in the city until plans and specifications of same have been filed in duplicate in the office of, and approved by the Smoke Abatement Engineer, except as hereinafter provid- and a permit issued for such erection, reconstruction or operation.

Sec. 1715-5 (a). Detailed description and drawings of process furnaces, stills and other like fuel burning apparatus, showing the purpose, design, dimensions, combustion space, amount and kind of fuel to be used, and all other details, shall be submitted to the subdivision of smoke abatement for approval.

Sec. 1715-5(b). Plans and specifications to be filed shall show the type of installation, size and capacity of such plant and all appurtenances belonging thereto, including all provisions made for the purpose of securing complete combustion of the fuel to be used for the purpose of preventing smoke, fly ash, fumes and otherwise accomplishing the purpose of this ordinance. Said plans and specifications shall also contain a statement of the kind and amount of fuel proposed to be used."

That the defendant failed to furnish the city such plans and specifications before erecting said ovens. That said operation is also in violation of Sections 1715-12 to 1715-14-B inclusive of the ordinances of the City of Cleveland. These sections of the city ordinances are a part of the smoke abatement code of the City. Section 1715-12 provides:

"The emissions of any smoke within the City of Cleveland, from the smoke stack on any steamboat, steam tug, steam roller, steam derrick, steam pile driver, tar kettle or any other similar machine or contrivance or from any open fire or from the smoke stack or chimney of any building, roundhouse, or premises, for any period or periods greater than shown in the table set forth in Sec. 1715-13 shall be deemed a violation of this Code."

Section 1715-13 defines the various kinds of plants and sets forth the Ringelmann Scale Classification.

Section 1715-14-14(a) and 1715-14(b) are as follows:

"Sec. 1715-14: The emission of cinders and fly ash or other solids larger in size than 50 mesh in a concentration greater than four (4) pounds per 1000 pounds of dry flue gas, is declared to be a nuisance and shall, at the direction of the smoke abatement engineer, be abated."

"Sec. 1713-14(a): On all furnaces built subsequent to the enactment of this ordinance, there shall be installed such means as are in practicial use in the industry in similar applications to reduce to reasonable limits the emission of dust, cinders, fly ash or other solid particles." "Sec. 1715-14(b): The emission from any premises of visible fumes, other than smoke, regardless of color or shade of a density equal to or greater than number one (1) of the Ringelmann Chart is hereby prohibited."

The petition further alleges that the defendant's operation of such coke oven installations is in violation of Section 857-J of the Municipal Ordinances and that the defendant could, with the exercise of reasonable and proper care, provide "against the wrongful conditions herein complained of."

The defendant's answer admits the operation of the coke plant; alleges that it acted as the agent of the Defense Plant Corporation of America which is an Agency of the Federal Government, organized in furtherance of the war effort, in the construction of said coke ovens, blast furnaces and related equipment, and that the said property is owned by the said Defense Plant Corporation, and that the defendant is now operating the same under lease with the said Defense Plant Corporation.

The defendant denies any wrongful conduct in the operation of the coke ovens and denies that plaintiff has suffered any inconvenience or damage because of said operation.

The defendant alleges that the plaintiff purchased his property with full knowledge that it was located on the very edge of the Cuyahoga Valley, which is occupied exclusively by steel mills, oil refineries, chemical works and companies engaged in other industrial pursuits which "cause smoke, dust and vapor to enter the air and with full knowledge that from time to time said area would be put to additional and enlarged industrial uses."

The defendant alleges that the coke oven installation is

of modern design, and is in all respects of the kind commonly used in similar plants of modern and improved construction and that said ovens have been operated in a careful manner and in accordance with the commonly accepted and most improved methods known to the industry.

The defendant further alleges that under the zoning ordinance of the City of Cleveland the city is divided into six use districts, two of which are industrial and that the "second industrial district" specifically provides for the manufacture of coke and that the property where the Defense Plant Corporation erected the coke ovens here under consideration, is zoned within the second industrial district, as shown by the maps filed as a part of the zoning ordinances.

The defendant's answer to the second cause of action denies that in the operation of said coke ovens it has violated any applicable ordinance of the City of Cleveland, or that it has failed to exercise ordinary care with regard to the rights of plaintiff.

Plaintiff, by reply, denies all the allegations in defendant's answer to his second amended petition, except as to its admissions of the truth of plaintiff's claims.

Upon trial, the court withdrew the plaintiff's second cause of action from the consideration of the jury and the jury upon the issues joined in the first cause of action, found for defendant.

The plaintiff in his assignment of errors claims:

1. That the verdict is contrary to the manifest weight of the evidence.

2. That the court erred in its general charge to the jury.

3. That the court erred in the admission of evidence offered by defendant and in rejecting evidence offered by the plaintiff.

4. That the court erred in withdrawing plaintiff's second cause of action of his second amended petition for the consideration of the jury, and in holding that certain specific ordinances of the City of Cleveland hereinbefore referred to, did not apply to defendant's business.

5. That the court erred in that part of its charge in which the jury was instructed that, in considering the reasonableness of defendant's coke oven operation under the circumstances they could consider the fact that the defendant was engaged in war work.

6. That the court erred in its instruction to the jury, on the subject of damages.

We will consider first the claimed errors in the court's general charge.

The charge of the court reads in part as follows:

"In determining the question of what constitutes a nuisance, you may start with the fundamental legal doctrine that everyone has a right to use his own property as he deems proper, but he must be careful to so use it that he does not injure the property of another, or injure another. This broad principle is subject to certain limitations, however, which I shall explain to you in the course of these instructions. These limitations upon and exceptions to the principle which I have just stated, have risen out of compromise necessary to the maintenance of our social life.

The business of the defendant was a lawful one, and the operation of coke ovens is not a nuisance per se, that is, the business is not of itself a nuisance, but it may be that a lawful business may be so operated as to injure the rights of another, and if any one so uses his property to the injury of another, he is liable in damages to the person so wronged.

However, it is the law that there must be an invasion of the rights of a person before he is entitled to redress, and this is true even if he has suffered damage. Thus, there is no liability on the part of defendant unless it is shown by a preponderance of the evidence that the invasion of the plaintiff's right has been either intentional and unreasonable, or on the other hand, unintentional and negligent or reckless.

If you find that the defendant was guilty of either of these courses of conduct, it is liable. There is no evidence of any malicious desire on the part of the defendant to do harm for its own sake, and therefore no intention to invade the plaintiff's interest in that sense but it will be for you to say whether in any other sense there has been such an intentional invasion for if it be shown that the defendant has created or continued a condition causing a nuisance with knowledge that harm to the plaintiff's interest is substantially certain to follow, such conduct is intentional and if there is no reasonable justification for such conduct the defendant would be liable.

A nuisance may also be the result of conduct which is negligent. Negligence is defined as the failure to use such care as persons of ordinary prudence are accustomed to exercise under the same or similar circumstances. Thus, if you should find that the defendant, while engaged in a perfectly proper activity, the making of coke, failed to take the precautions which a reasonably prudent man would have taken to

prevent the emission of stench, smoke and other injurious substances, it would be guilty of negligence.

If, on the other hand, you find from the evidence that the defendant operated the coke oven installations as a reasonably prudent man would have operated it, it would not be guilty of negligence. If you find there has been an invasion of plaintiff's rights you should determine whether such invasion is reasonable or unreasonabe.

It is a rule of law that in order for an injured person to recover damages, the interferences with his rights must be unreasonable. Thus, if the defendant operated its coke oven installations in the usual and ordinary way by modern appliances, and without negligence on its part, there would be no liability providing the operation is not inherently obnoxious or dangerous. Thus, the defendant was entitled to conduct its business, if it did so, within reasonable limits even at the expense of some harm to its neighbors. It could operate its coke ovens and other equipment, even though they caused some smoke and dust and steam with consequent annoyance and discomfort, and damage to the plaintiff, provided it kept within reasonable bounds, but if its conduct became unreasonable and the conditions which it created continued and were beyond the limits of reasonableness, then a nuisance exists and the defendant would be liable in such case.

You, therefore, should determine from all of the evidence whether the conduct of the defendant was under all of the circumstances reasonable or unreasonable. If it is reasonable, there is no liability. If it was not reasonable, and there was an invasion of plaintiff's rights, which I have already discussed with you, then there would be liability.

There is no hard and fast rule which I can give you for your guidance in your determination of this matter for a thing which is reasonable under one set of facts, would be unreasonable under another. There are certain facts which you may take into consideration, however, in determining this point. You may consider the location of the alleged nuisance. The plant is located in what has been designated by Council as a zone within which such a plant or installation is permitted. The plaintiff's home is located in what has been zoned for residences.

Zoning ordinances are ordinances passed by municipalities to protect the public health, safety and general welfare. You may assume that they were passed after due consideration of the character of the various municipal districts, the use to which they would be put, the conservation of property

values. In other words a plan designed generally as a plan for the orderly development of the municipality.

The fact, however, that the plant is located within a permitted zone does not relieve the defendant of the obligation to operate its installations so as not to cause a nuisance. In addition to this, you should consider the evidence with reference to the general character of the district in which plaintiff's home and defendant's plant are located. You should keep in mind that nuisance is often a matter of degree and what would be considered a nuisance in one location would not be considered a nuisance in another. You may consider the manner in which the defendant operates the plant. Were the coke ovens and quenchers constructed, maintained and operated by modern up to date methods and machinery, or were the installations poorly constructed or improperly or carelessly operated? This you should determine from all of the evidence.

You may also give consideration to the extent and frequency of the injury, if any. Did it occur frequently and for long periods of time, or were the visitations of which the plaintiff complains infrequent or of slight duration? You should, of course, consider the general effect of the injury, if you should find that there has been an injury upon the health, property and enjoyment of the plaintiff. Have these injuries been severe or slight, substantial or negligible, actual or fanciful?

You may also quite properly consider the uses to which the plaintiff is putting his property. You may also quite properly consider the uses to which the defendant is putting its property and the necessity therefore.

It has been said that life in organized society and especially in populous communities involves that inevitable clash of individual interests and that each individual in a community must put up with a certain amount of inconvenience and interference and must take a certain amount of risk in order that all may get along together. If the air over Cuyahoga County had been maintained in its pure and natural state, then Cleveland would never have developed and become the great industrial center that it is. On the other hand, a man's home is his most precious possession, no matter how humble. In those cases where the harm or damage is greater than one ought to be required to bear under the circumstances, the liability is imposed upon the one who causes the injury and compensation may be awarded by way of damages.

There has been something said in this case about the

installations having been built and owned by the Defense Plant Corporation, which is an agency of the United States Government. This is an action, not against the Government for the construction of the plant but against the defendant for operating it in such a manner as to cause a nuisance. If, therefore, you find that the defendant was operating and maintaining the coke oven installations so as to create a nuisance, as I have defined that term to you, it would be liable even though the plant was built and owned by the Defense Plant Corporation and the defendant operated it by virtue of contract or lease. However, you have the right to consider in determining the reasonableness or unreasonableness of the defendant's conduct and the question of the invasion of plaintiff's rights, the fact that our country is at war and that the defendant is engaged in war pursuits.

Is the injury, if any, of which plaintiff complains such as he must suffer as an incident to citizenship in a democracy, and must he find his compensation in the defense of his country through the eforts of the defendant and others, or is it possible for the defendant to successfully make its contribution to the war effort without invading the rights of the plaintiff? This test, like many of the others which I have given you, is not conclusive but may be considered by you in reaching your conclusion of fact.

In order for the plaintiff to prevail, he must show that the injury which he suffered, if any, is real, material and substantial. He is not entitled to damages if it is shown that the injury of which he complains is trivial, or unsubstantial. The law does not concern itself with petty nuisances and disturbances of every day life in an industrial community, but does safeguard the rights of all to enjoy the ordinary comfort of their home as understood by the civilized people in their present state of enlightenment. You should, therefore, determine from all of the evidence, if you find the rights of the plaintiff were invaded, whether such invasion was of a substantial nature. If it was, there is liability on the part of the defendant. If not, there is no liability."

We have quoted at length from the charge so that the full text of the rule as it was presented to the jury could be seen. The plaintiff's contention seems to be that regardless of all other considerations the defendant has no legal right to use its property so as to inconvenience or cause harm to plaintiff in the use and enjoyment of his property, regardless of the

circumstances under which such inconvenience was created. We do not understand that to be the correct rule. The plaintiff's property, although in a zone reserved for residence purposes, is located at the very edge of the heart of the industrial district of Cleveland. His home overlooks a valley in which is located three large steel mills, oil refineries, chemical works and many other heavy industries. Their operation when managed in the most scientific way, necessarily creates smoke, dust, dirt, grime and noise. Under these circumstances the defendant in the operation of its business such business being in all respects lawful, is charged with the duty not to reasonably interfere with plaintiff's enjoyment of his property under all of the attending circumstances, that is, plaintiff should not be compelled to withstand any greater annoyance or bear any greater burden than he should reasonably be' required to bear under all the circumstances.

In the case of **Eller v Koehler, 68 Oh St 51**, at page 57, the court says:

"All that can be required of a man who engages in a lawful business is that he shall regard the fitness of the locality. In the residence sections of a city, business of no kind is desirable or welcome. On the other hand, one who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood, should be held bound to submit to the ordinary annoyances, discomforts, and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood. The true rule would be that any discomfort or injury beyond this would be actionable * * *."

In **30 O Jur. 389 §114**, the author, although dealing with the question of the right to enjoin a continuing nuisance, stated the general rule as to what factors are to be considered in determining what is or is not a nuisance, as follows:

" * * * * *. If, however, a person becomes a resident of a trading or manufacturing neighborhood or remains there while, in the march of events, such a district gradually becomes a trading or manufacturing neighborhood, he is bound to submit to the ordinary annoyances, discomfort and injuries which are merely incidental to the reasonable and general conduct of such business * * ."

In 46 Corpus Juris 654, 656, under the title "Principles Governing and Elements Constituting Actionable Nuisances," the rule is stated as follows:

"Whether a nuisance exists is a question to be determined not merely by an abstract consideration of the thing itself, but in reference to its circumstances. For instance, the reasonableness of the use, the locality, the extent of the injury, the nature and effect of the matters complained of are matters that may be considered. No particular fact is conclusive. All the attending circumstances must be taken into consideration. * * * * *."

"A fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conduct the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case, and ordinarily where the use made of property or the conduct of a business is reasonable, no actionable nuisance is created as against which relief may be had. When it is established that a person is creating a nuisance, the mere fact that he is doing what is reasonable from his point of view constitutes no defense. Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable, is sometimes a question of law and at other times, a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable * * * * *."

The supreme court of Pennsylvania, in considering this question said, in the case of Ebur v Alloy Metal Wire Co. 304 Pa. 177:

"* * * It has been said that a 'fair test as to whether a business, lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business, or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case.' 46 C. J. 655. It has also been said:

'Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the

subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable is sometimes a question of law, and at other times a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts provided whether the controlling fact exists that the use is unreasonable.' 46 C. J. 656." "No word is used more frequently in discussing cases of this kind, than the word 'reasonable' and no word is less susceptible of exact definition. What is reasonable under one set of circumstances is unreasonable under another. Custom itself has much to do with determining what is reasonable. Noises which in the preindustrial era would have been considerered intolerably unreasonable, are now tolerated as reasonable. The noise and smoke of railroad trains frequently passing human habitation is not now considered unreasonable, although an equal amount of noise and smoke would doubtless at an earlier time have been considered unreasonable. That a certain amount of smoke, fumes, gases, and noises will necessarily be produced and emitted by manufacturing plants is inevitable, but that persons who dwell near manufacturing plants, like persons who dwell near railroads or on busy city streets, must put up with a certain amount of resulting annoyance, and discomfort is self-evident. The prosperity of an industrial community depends on its industrial activities, and it would be inconsistent with sound public policy to prohibit these activities at the behest of a comparatively few who are annoyed thereby. Every form of industrial activity has its disagreeable factors. Industries, like individuals, have 'the defects of their qualities.' In mining and manufacturing communities, people must expect that their homes will be more difficult to keep clean than if they lived in an agricultural community. A certain amount of noise also is inseparable from industrial activity. The burdens of prosperity must be taken with its benefits."

The Supreme Court of Pennsylvania again approved this statement of the rule in Hannum et al v Gruber, 346 Pa. 417 which was an action in equity to enjoin the continuing of claimed nuisance, (smoke, gases and noise) in the operation of a large dry cleaning establishment.

Wood on Nuisances, §6 at page 9, says:

"* * * * *. People living in cities and large towns, must submit to some inconvenience, to some annoyance, to some

discomfort, to some injury or damage; must even yield a portion of their rights to the necessities of business, which, from the very nature of things must often be carried on in populous localities and in compact communities where facilities alone exist upon which it can be kept up and prosecuted."

In Restatement of the Law of Torts, Chapter 40, §826, page 241, the rule is stated as follows:

"An intentional invasion of another's interest in the use and enjoyment of land is unreasonable under the rule stated in §822 unless the utility of the actor's conduct outweighs the gravity of the harm."

"COMMENT: (a) Unreasonableness is general. * * * Fundamentally the unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case.

(b). The point of view. The unreasonableness of an intentional invasion is determined from an objective point of view. The question is not whether a reasonable person in the plaintiff's or defendant's position would regard the invasion as unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable. Regard must be had not only for the interests of the person harmed but also for the actor and for the interests of the community as a whole. Determining unreasonableness is essentially a weighing process involving a comparative evaluation of conflicting interests in various situations according to objective legal standards."

Sec. 822 to be found at page 226 provides:

"General Rule. The actor is liable in an action for damages for a nontrespassory invasion of another's interest in the private use and enjoyment of land, if

(a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either

(i) intentional and unreasonable; or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultra-hazardous conduct."

And in explaining the terms "Gravity of Harm v Utility"

paragraphs 827 and 828 at page 244 and 250 respectively provide:

"Sec. 827: Gravity of Harm—Factors Involved. In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are to be considered:

(a) the extent of the harm involved;

(b) the character of the harm involved;

(c) the social value which the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality;

(e) the burden on the person harmed of avoiding the harm."

"Sec. 828: Utility of Conduct—Factors Involved. In determining the utility of conduct which causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) social value which the law attaches to the primary purpose of the conduct;

(b) suitability of the conduct to the character of the locality;

(c) impracticability of preventing or avoiding the invasion."

And on page 254, under "Suitability to Character of Locality" we find:

"* * * * * * *. Consequently, the utility of conduct which causes an intentional invasion of another's interest in the use and enjoyment of land depends not only upon the social value of its primary purpose but also upon its suitability to the character of the locality in which it is being carried on. The operation of mortuaries or insane hospitals has unquestionable social value, but the utility of a person's conduct in operating them in a strictly residential locality is decidedly less than it is in operating them in a locality devoted to nonresidential activities. The character of a locality depends upon the type of activity to which it is primarily devoted * * * * *."

In the case of Gardner v International Shoe Co., 386 Ill. 418, the court was called upon to consider an action for damages because of a claimed nuisance caused by the operation

of a tannery in connection with the carrying on of the shoe business. The plaintiff claimed that the defendant permitted certain gases, odors, fumes and other unwholesome, noisesome, unclean and irritating vapors to escape into the air in the operation of its factory, thereby unlawfully, wrongfully and improperly interfering with his wholesome enjoyment of his property. The court in rendering final judgment for the defendant, said in the third paragraph of the syllabus:

"When dwelling owners in industrial community cannot recover damages because of industrial odors: Owners of dwellings in an industrial community are not entitled to recover damages because of odors coming from an industrial plant where hides are tanned and made into leather, or coming from the pool or settling basin operated as a part of the plant under modern methods, as the unlimited and undisturbed enjoyment which one is entitled to have of his own property is qualified to the extent that trifling inconveniences resulting from the useful employment of property must be submitted to when what is complained of arises from and is suitable to the locality and is reasonable under the circumstances."

See also: Jedniak et al v Minneapolis General Electric Co. 4 N W 2nd 326. Sup. Ct. of Minnesota, 1942.

Rosario Tortorella v H. Traiser & Co. Inc. 90 A L R 1203. Mass. Sup. Jud. Ct. 1933.

**Taylor v Cincinnati, 143 Oh St 426.**

The plaintiff relies strongly on the case of Susquehanna Fertilizer Co. v Malone, 73 Ind (268) (1890). In the course of the opinion the court quotes with approval from an earlier English case, as follows:

"As far back as Pynton v Gill, 2 Rolle's Abr., 140, an action it was held would lie for melting lead so near plaintiff's house as to cause actual injury to his property even though the business was a lawful one, and one needful to the public; 'for the defendant' say the court, 'ought to carry on his business in waste places and great commons remote from such inclosures, so that no damage may happen to adjoining property.

And the doctrine thus laid down has been to this day the doctrine of every case in which a similar question has arisen."

We have progressed considerably since the time when such a rule was applied to the industrial life of the commun-

ity, and the superior court of Maryland in Meadowbrook Swimming Club v Talbot J. Albert et al, 173 Md. 641 (1935) although citing with approval the foregoing authority did modify it to some extent by holding in the third paragraph of the syllabus:

"It is not every inconvenience that will call forth the restraining power of a court as being a nuisance, but the injury must be such as to diminish materially the value of the property as a dwelling and seriously interfere with the ordinary comfort and enjoyment thereof."

By far the greater weight of authority supports the law of Nuisance, as stated in the "Restatement of the Law of Torts" supra, and the supporting authorities above referred to. We conclude that the general charge of the court was in complete accord with the law of nuisance as thus stated and the issues presented in plaintiff's first cause of action and the defendant's answer thereto and the definition of a nuisance was properly given to the jury.

The plaintiff also complains of the court's charge with regard to defendant's part in the war effort as a circumstance to be considered in the reasonableness or unreasonableness of its use of its property, and the extent to which such activity would require the plaintiff as a citizen to accept inconveniences. Such instruction was entirely in accord with the great weight of authority. War creates a National Emergency. The great need for the materials of war overshadow every other consideration. The very life of the nation depends upon it and every hour that could be saved meant the saving of the lives of our fighting men and brought us closer to victory. Of what value would plaintiff's property be without victory? It is also true that in time of war the ability to manufacture goods is far more difficult. The shortage of competent help and good materials is an ever-occuring obstacle and many substitutes must be used. We find no prejudicial error as to this part of the court's charge or the ruling of the court on the introduction of the evidence upon this subject.

The plaintiff alleges that the court erred in its instruction on the question of damages. Upon this question it told the jury that the measure of damages would be such sum as would compensate him for all damages suffered from the beginning of the operation of the coke ovens to the date of the filing of plaintiff's petition and that in considering the

question the rule to be applied was the difference between the value of the use of the property prior to the defendant's use of its coke ovens and the value of its use after the ovens were in operation.

It would seem that such a question is now purely academic since the jury in a general verdict found for the defendant. The question of what measure of damages was to be applied to the case in the event of a verdict for plaintiff is not of any importance and the giving of an incorrect rule would not prejudice the plaintiff's rights.

The plaintiff further complains that the court committed prejudicial error in withdrawing from the consideration of the jury the plaintiff's second cause of action. The first group of ordinances referred to in the plaintiff's second cause of action had to do with the necessity of the defendant securing a building permit after submitting its plans and specifications to the city for approval. The sections involved are 1715-5, 1715-5 (a) and 1715-5(b) supra. The failure to get a permit could not under any circumstances be a proximate cause of any injury suffered by plaintiff in the operation of defendant's coke ovens.

In this connection it must be remembered that the defendant constructed the coke ovens as an agent of the Defense Plant Corporation of America, created by the Federal Government in furtherance of the war effort. Certainly no municipal ordinance could be invoked to limit the power of the Federal Government to erect whatever it deemed necessary on its own property to meet the emergency of war.

Sec. 857 of the Municipal Ordinances of Cleveland provides:

"No persons, firm or corporation owning or having the possession, charge or management of any building, premises or vehicle shall suffer or permit any coal dust, ashes, dust, or offensive odor to escape or be blown therefrom.

No person, firm or corporation owning, or having the possession, control, charge or management of any forge, coal yard, brick yard, shop, factory, or other place of business shall suffer, or permit any coal dust, ashes, cinders, or refuse to accumulate on the premises, or in the appurtenances thereof, except in a receptacle or receptacles so constructed and placed that no part of the contents thereof may escape or be blown from the premises."

The terms of this ordinance are in direct conflict with Sec.

1715-12 to 15(b) inclusive, supra, and thus is repealed by implication.

The court found that there was no evidence to support plaintiff's contention that the operation of defendant's coke ovens violated the provisions of Sections 1715-12 to 15(b) or that said sections were applicable to the defendant's operation of the coke ovens. In this we find the court was right and there was, therefore, no error in withdrawing plaintiff's second cause of action of its second amended petition from the consideration of the jury.

The plaintiff also claims that the court was in error in receiving the evidence of one of defendant's experts and the charts he had produced from tests made of dust and the gases in the air, in the neighborhood of defendant's coke ovens operation.

It is admitted by defendant that the witness did not collect all of the supporting data from which he drew his conclusions, but that such information was, for the most part, gathered by others and such persons were not called to testify or subject themselves to cross-examination, as to the manner or means by which they collected the data submitted to the expert.

The complete answer to plaintiff's objection is to be found in the Statutes. **Sections 12102-17-18-19** which became effective Sept. 6, 1939, provide:

"**Sec. 12102-17:** A written report or finding of facts prepared by an expert not being a party to the cause, nor an employe of a party, except for the purpose of making such report or finding, nor financially interested in the result of the controversy, and containing the conclusions resulting wholly or partly from written information furnished by the cooperation of several persons acting for a common purpose, shall, insofar as the same may be relevant, be admissible when testified to by the person or one of the persons making such report or finding without calling as witnesses the persons furnishing the information and without producing the books or other writings on which the report or finding is based, if, in the opinion of the court, no substantial injustice will be done the opposite party."

"**Sec. 12102-18.** Any person who has furnished information on which such a report or finding is based may be cross-examined by the adverse party, but the fact that his testimony is not obtainable shall not render the report or finding

inadmissible unless the trial court finds that substantial injustice would be done to the adverse party by its admission."

"Sec. 12102-19. Such report or finding shall not be admissible unless the party offering it shall have given notice to the adverse party a reasonable time before trial of his intention to offer it, together with a copy of the report or finding, or so much thereof as may relate to the controversy, and shall also have afforded him a reasonable opportunity to inspect and copy any records or other documents in the offering party's possession or control, on which the report or finding was based, and also the names of all persons furnishing facts upon which the report or finding was based."

No objections have been interposed because of the failure to give notice. The requirement of notice was thereby waived.

And, finally, we find that the plaintiff's claim that the verdict is against the manifest weight of the evidence, is not well taken.

For the foregoing reasons, the judgment of the Court of Common Pleas is affirmed.

LIEGHLEY, J., and MORGAN, J., concur in judgment.