Tom A. FUCHS (Plaintiff), Appellant,

v.

CURRAN CARBONIZING and ENGINEERING CO., Inc., a Corporation (Defendant), Respondent.

No. 29084.

St. Louis Court of Appeals.

Missouri.

May 17, 1955.

Motion to Modify Opinion Denied June 10, 1955.

Hullverson & Richardson, James W. Jeans, St. Louis, for appellant.

J. Porter Henry, Robert D. Evans, Walther, Hecker, Walther & Barnard, Herbert E. Barnard, St. Louis, for respondent.

HOUSER, Commissioner.

This is a suit for damages resulting from the creation of a private nuisance. A trial jury returned a verdict for Tom A. Fuchs and against Curran Carbonizing and Engineering Co., Inc., for $4,500 and judgment was rendered accordingly by the Circuit Court of St. Louis County. The trial judge ordered the verdict and judgment set aside and sustained defendant's motion for a new trial on the ground that Instructions Nos. 1 and 7 were misleading, improper, confusing and at variance with the cause of action pleaded. From that order plaintiff has appealed.

Plaintiff's petition was in two counts. Eliminating caption and prayer, Count One follows:

### "I.

"Comes now the plaintiff and states that he is, and at all times hereinafter mentioned was the occupant of premises located at 742 E. Big Bend, Crestwood, Missouri, and that the same premises serve as a home for the plaintiff and his family and also located therein is a bar and restaurant known as the Grantwood Tavern.

### "II.

"Plaintiff further states that the defendant operates a commercial plant at 750 E. Big Bend, Crestwood, Missouri, and that the said plant is in close proximity to the home and the business establishment of the plaintiff.

### "III.

"Plaintiff further states that commencing on or about the summer of 1951 certain noxious, deleterious, harmful, foul and ill smelling fumes and gases were caused to be emitted from the said plant of the defendant, and that these fumes, and gases, have been so emitted up to the present date so as to create and cause a nuisance and render the premises of the plaintiff unhealthy, dangerous and unfit, for the maintenance of plaintiff's home and business.

### "IV.

"As a direct result of the creation and continuance of the aforesaid nuisance plaintiff's eyes, nose, throat, bronchia, lungs and respiratory system and the membranes, tissues, muscles, tendons and flesh thereof were severely inflamed, irritated, swollen, and infected. Plaintiff has suffered from shortness of breath, sneezing, wheezing, loss of appetite, nausea, nervousness and insomnia. All of the aforesaid injuries are painful and permanent. Plaintiff has incurred medical expenses and in the future will incur

further medical expenses. Plaintiff has suffered diminution of his business and loss of earnings therefrom."

Count Two was based upon *negligently* causing the emission of noxious fumes, but no evidence of negligence was introduced and a motion for a directed verdict on Count Two was sustained at the conclusion of plaintiff's case. No point is made in this connection on this appeal.

From 1943 to 1953 plaintiff operated a tavern near Lindbergh and Big Bend Roads in St. Louis County. The business was conducted in a concrete block building located on a 7-acre tract which plaintiff occupied as a month-to-month tenant of Forest Park Lumber Company. The building consisted of a dining room, barroom, kitchen and two back rooms in which plaintiff, his wife and a teen-age daughter lived. Defendant operated a coal-testing plant in a nearby building located on the same tract approximately 130 feet south of the tavern. The area was zoned "light industrial." Other nearby commercial property included the Gan coal yard and filling station, located about 115 feet east of the tavern, a railroad spur east of the coal yard, and the Sapo-Elixir Chemical laboratory east of the tracks. Located northwest and across Big Bend Road from plaintiff's tavern is Yacovelli's restaurant and tavern.

Plaintiff's evidence showed that beginning in 1951 and continuing until May 31, 1953 strong, ill-smelling and nauseating fumes, smoke and gas emanated from defendant's coal-testing plant and came onto the premises of plaintiff. Thick yellow-brown smoke would settle to the ground and invade the building on plaintiff's premises. This occurred two or three times a week, depending on how the wind was blowing. The odor and gas would persist for several hours of the day, and during the night. The condition became progressively worse and was "very bad" in 1953. The odor was variously described as that of tar, rotten cabbage, sulphur, bottling gas, and muriatic acid. It was nauseating and induced a choking feeling. Prior to the time the fumes commenced plaintiff had

never had trouble with his throat but afterward he got hoarse and had a sore throat for two years. His throat would become so sore that he would not want to talk. He went to four doctors. Dr. Seabaugh treated him several times. Dr. Alden, a nose and throat specialist, treated him for 12 to 15 months. Plaintiff made a dozen trips to Dr. Stutsman. A Dr. Koch, a nose and throat specialist, treated him. Plaintiff could not enjoy his meals on account of the fumes, which also "interfered" with his wife and daughter and made them "very ill, many times." It nauseated plaintiff's wife, interfered with her sleeping, produced coughing and sickness. For relief she would put a wet towel over her face and head. Plaintiff's wife would get sick every time the fumes were discharged. The daughter could not have her girl friends to visit her at her home because of the embarrassment arising out of the nauseating odors. Various tavern customers testified that their enjoyment of the tavern was interfered with by the odors; that they "couldn't stand it;" that it was "too much for them;" that they "almost choked to death;" and that on occasions they would leave the tavern because of the odors. Plaintiff received many complaints from the regular customers concerning the smells. They would complain every time they came in. They would inquire whether plaintiff was cooking with garbage and burning old tires. One customer became nauseated and ill and had to leave the premises without finishing her barbecue. Plaintiff testified that the smells not only interfered with business inside the tavern but also with the customers playing horseshoes on the outside; that people were "staying away." Although plaintiff's business increased through 1951 it fell off toward the end of 1952 and continued to fall off during 1953. There was testimony that it was embarrassing to wait on the customers because of the odors. Plaintiff complained to the officials of the municipality. An investigation resulted in the issuance of a summons to an officer of defendant company, who was charged in city court with operating a public nuisance by allowing the escapage of gas and smoke.

Defendant's evidence indicated that the amount of smoke emitted during the test of coal was inconsequential; that the fumes were so dissipated in the atmosphere that they would not affect a person 150 feet away from defendant's plant, and that the characteristic odor was not harmful to persons; that neither the employees at the defendant plant nor the employees of various businesses operated in the immediate vicinity were affected or made sick by the gases or fumes emanating from defendant's plant. Further, that no complaints were received from any of the employees working in nearby business places. A gardener who lived 150 feet from defendant's plant testified that he paid no attention to fumes and gases; that one morning he saw a little smoke coming from defendant's plant but that it was not hurting anything; that although he worked around there all the time the odors did not interfere with him or his gardening.

On this appeal defendant makes the point that plaintiff did not make a submissible case and that the court should have directed a verdict for defendant; that there was no evidence showing that defendant's acts caused a nuisance or that plaintiff was damaged as a result of personal injury caused by a nuisance. Proof of the emission of noxious and odoriferous fumes and gases which invaded and settled on plaintiff's premises in sufficient quantity, frequency and intensity to destroy plaintiff's enjoyment of his food, to induce a choking feeling, hoarseness, and a persistent sore throat requiring extensive medical attention, to prevent his wife from sleeping in a normal manner, to make plaintiff's wife and customers ill, to embarrass his daughter in the use of her home, and to drive away custom and trade, under the circumstances shown, made a submissible case based on nuisance. There was no error in overruling defendant's motion for a directed verdict at the close of defendant's case. Clark v. City of Springfield, Mo.App., 241 S.W.2d 100; Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728; Bradbury Marble Co. v. Laclede Gaslight Co., 128 Mo.App. 96, 106 S.W. 594; Powell v.

Brookfield Pressed Brick & Tile Mfg. Co., 104 Mo.App. 713, 78 S.W. 646; United States Smelting Co. v. Sisam, 8 Cir., 191 F. 293, 112 C.C:A. 37, 37 L.R.A.,N.S., 976; 4 Sutherland on Damages, 4th Ed., 3890; 1 Wood on Nuisances, § 1.

■ Defendant further contends that plaintiff as a month-to-month tenant had no vested right of continuing occupancy and could not recover for interference with the use of rented premises. Under the case of Ellis v. Kansas City, St. J. & C. B. R. Co., 63 Mo. 131, plaintiff as the occupant and in the rightful possession of the premises had the right to maintain an action for damages occasioned by the maintenance of a private nuisance. And see 66 C.J.S., Nuisances, § 82 b., page 838.

The trial judge ruled that Instructions Nos. 1 and 7 were misleading, confusing and at variance with the cause of action pleaded. They are as follows:

"No. 1.

"The Court instructs the jury that the plaintiff, Tom Fuchs, had a right to the peaceful and uninterrupted occupancy and enjoyment of his home and business premises.

"Therefore, you are instructed that if you find from the evidence that beginning in 1943 Mr. Fuchs occupied and used a certain building and lot located at 742 East Big Bend Boulevard as a home and in the operation of a tavern business, and that commencing in 1945 the defendant company occupied and used certain premises immediately to the south and in close proximity to said building and lot occupied by Mr. Fuchs, and

"If you further find from the evidence that beginning in 1951 and continuing through May, 1953, the defendant company caused and permitted certain noxious; ill-smelling and deleterious odors and gases to issue from its laboratory and premises, and that on certain days during said period such odors and gases spread and diffused northwardly across and upon the premises occupied by the plaintiff and unreasonably interfered with his enjoyment and occupancy of his premises, and that he suffered discomfort, annoyance, inconvenience and damage as a result thereof,

"Then and in that event you are instructed that the plaintiff is entitled to recover and your verdict should be in his favor on Count One of his petition."

"No. 7.

"The Court instructs the jury that if you find the issues herein joined on Count One under the evidence and these instructions of law in favor of Mr. Fuchs, then it is your duty to assess his damages at such sum of money as you find from the evidence will fully, fairly and reasonably compensate him for:

"*First,* such injury and impairment, if any, in the use and occupancy of his home as you find from the evidence were caused by the odors and gases mentioned in Instruction No. One; *and*

"*Second,* such loss, if any, of his earnings from the tavern business on said premises as you find from the evidence was caused by such odors and gases."

■ In support of the action of the trial court defendant claims that No. 1 enabled plaintiff to recover damages not for personal injuries from gas fumes, as pleaded, but on an entirely different theory, namely, that he sustained injuries including personal injuries flowing from the impairment of peaceable possession and quiet enjoyment, and that No. 1 failed to require a finding that plaintiff's business losses were the result of personal injuries caused by the nuisance. To hold that Count One is naught but a suit for damages for personal injuries and that the only business losses for which recovery was sought were losses suffered because of the infliction of the personal injuries would require a forced

construction of the pleading. We cannot disregard and overlook the significant allegations of Count One relating to use and occupancy of the premises as a home and as a business establishment and the rendition of the premises unhealthy, dangerous and unfit for the maintenance of the home and business, and the allegation of diminution of plaintiff's business and loss of earnings from the creation of the nuisance. Considering Count One in its entirety in connection with Instruction No. 1 and having in mind that in presenting their evidence the parties tried out the question of injury to the use and occupancy and disturbance of quiet and peaceful possession, it is apparent that the cause of action pleaded, tried and instructed upon was the creation of a continuing private nuisance by defendant emitting noxious, deleterious, harmful, foul-smelling gases and fumes so as to unreasonably interfere with plaintiff's use of the premises occupied by him, thereby rendering the premises unhealthy, dangerous and unfit for the maintenance of plaintiff's home and business. It further appears that it was plaintiff's theory in the pleadings, evidence and instructions that he suffered several different kinds of resultant damages: personal physical injury and special damages in connection therewith, injury to plaintiff's use, occupancy and enjoyment of the premises for the purposes for which they were rented, and loss of business earnings. We find no variance between the petition, the evidence and the instructions. Plaintiff pursued a consistent theory throughout, and this point must be ruled against defendant.

Defendant objects that No. 1 failed to require the jury to find that defendant was guilty of creating and maintaining a nuisance, but this was not error. It was entirely outside the province of the jury to pass upon the question whether the acts complained of constituted a nuisance. This was a question of law. Divelbiss v. Phillips Petroleum Co., Mo.App., 272 S.W.2d 839, loc. cit. 843; Clark v. City of Springfield, supra, 241 S.W.2d loc. cit. 107, and cases cited. An instruction which, in terms, leaves to the jury the question

whether the defendant's operation was a nuisance has been held erroneous and misleading. Kirchgraber v. Lloyd, 59 Mo.App. 59.

Defendant also objects that No. 1 failed to require a finding as a fact that plaintiff was injured or that his injuries were the result of the alleged nuisance. By No. 1 the jury was required to find that plaintiff "suffered discomfort, annoyance, inconvenience and damage as a result" of an unreasonable interference with his enjoyment and occupancy of the premises, but by No. 7 the jury was permitted to find damages only for such injury and impairment "if any" in the use and occupancy of his home, and such loss "if any" of earnings from the business, "caused by such odors and gases." The essential elements of injury, damage and causation are clearly required findings in these instructions.

Defendant further objects to the direction in No. 1 that plaintiff "had a right to the peaceful and uninterrupted occupancy and enjoyment of his home and business premises" on the ground that this is an abstract statement of the law. Similar language has been upheld in two other nuisance cases as against the same objection. Clark v. City of Springfield, supra; McCracken v. Swift & Co., 212 Mo.App. 558, 250 S.W. 953, affirmed Mo.Sup., 265 S.W. 91.

Next, defendant complains that No. 1 fails to require a consideration of the location of plaintiff's premises and surrounding conditions and circumstances. Pointing out that the area was zoned for industrial purposes, defendant argues that "One cannot locate his premises in an area of filling station, coal yard, railroad, chemical plant and testing laboratory and complain of the ordinary expected noise, smells and excretions of such enterprises." This objection is of particular concern since the record shows that defendant offered but the court refused to give Instruction B by which the jury was authorized to take into consideration the locality of the business of the respective parties, the nature of defendant's business, the

character, manner, and frequency of the use of defendant's equipment, and the kinds of businesses being conducted in the vicinity. No other instructions were given on this phase of the case. Although the opinion in McCracken v. Swift & Co., supra, does not so indicate, the abstract of the record therein shows that the court gave Instruction E, of which, for all practical purposes, refused Instruction B herein is a reproduction.

■■ In the instant case the court, by giving No. 1 and refusing B, deprived the jury of any guide or standard by which to apply the rule of unreasonable interference except that of priority of occupation. Priority of occupation is only one of several elements to be considered. Greene v. Spinning, Mo.App., 48 S.W.2d 51; 66 C.J.S., Nuisances, § 8 e., page 746; Hayden v. Tucker, 37 Mo. 214. This gave the jury a roving commission, authorizing them to determine the question whether the gases and odors "unreasonably interfered" with plaintiff's enjoyment of his premises on whatever basis may have occurred to them, without the benefit of the signs and guideposts recognized in law. In Kirchgraber v. Lloyd, supra, an instruction that the burden was on the plaintiff to prove that the defendant's brick kiln is a "nuisance in fact," without explaining to the jury how such a determination was to be made, was held erroneous and misleading. So, here, the jury should have been advised that it could take into consideration the locality and the character of the surroundings, the nature, extent and frequency of the harm involved, the nature, utility and social value of the use or enjoyment invaded, the effect upon the enjoyment of plaintiff's life, health and business and the health and convenience of the members of plaintiff's family. Clinic & Hospital v. McConnell, Mo.App., 236 S.W.2d 384, 23 A.L.R.2d 1278; Kelley v. National Lead Co., supra; Schott v. Appleton Brewery Co., Mo.App., 205 S.W.2d 917; Restatement, Torts, Vol. IV, §§ 822, 831, pp. 214–265.

■■ Nor was the jury advised as to the effect of the zoning regulations. A man is entitled to the maximum protection that the law can afford him in the comfortable enjoyment of his home under the conditions existing in that locality, consistent with the rights of others, but there is bound to be a certain amount of inconvenience and interference with the absolute enjoyment of one's home as an inevitable incident to its location in a populous center, Greene v. Spinning, supra, 48 S.W.2d loc. cit. 59, and particularly in an area zoned for industrial purposes. Persons living in cities and towns must necessarily submit, without legal recourse, to the annoyances, and discomforts incidental to municipal life, including the conduct of those commercial enterprises which are properly located and carried on in the neighborhood where they reside and which are necessary for trade and commerce and the comfort and progress of the public at large. Clinic & Hospital v. McConnell, supra; Schott v. Appleton Brewery Co., supra; 66 C.J.S., Nuisances, § 13, page 759; 39 Am.Jur. § 44, pp. 325, 326; Wood on Nuisances, Vol. I, § 6, p. 9; Annotation: 169 A.L.R. 1378, III. The right of plaintiff to the peaceful and uninterrupted enjoyment, use and occupancy of his premises was not absolute. That right is relative, and the question whether a particular interference therewith is reasonable or unreasonable depends upon the circumstances of the case. What would be an unreasonable interference with the comfortable enjoyment of one's home in a residential area might be regarded as the normal, expected and inescapable concomitant of modern social conditions in an industrial section. Bradbury Marble Co. v. Laclede Gaslight Co., supra; Magel v. Gruetli Benev. Soc. of St. Louis, 203 Mo.App. 335, 218 S.W. 704. The instruction should have contained appropriate direction that a resident of an area zoned light industrial cannot expect the same relative freedom from air pollution as that enjoyed by those in residential districts, and a suitable charge that the fact that defendant's plant was located in an area zoned industrial does not justify its maintenance as a nuisance. Scallet v. Stock, 363 Mo. 721, 253 S.W.2d 143; Fendley v. City of Anaheim, 110 Cal.App. 731, 294 P. 769; Williams v. Blue Bird

Laundry Co., 85 Cal.App. 388, 259 P. 484; Jedneak v. Minneapolis General Electric Co., 212 Minn. 226, 4 N.W.2d 326; Soukoup v. Republic Steel Corp., 78 Ohio App. 87, 66 N.E.2d 334. The wording of the first paragraph of No. 1, in the absence of qualifying instructions, tended to create the impression in the mind of the average lay juror that plaintiff's right to the peaceful and uninterrupted use and occupancy of his home was absolute, and to that extent the instruction was confusing and misleading.

 Furthermore, No. 1 was erroneous because it authorized a verdict for plaintiff upon a finding of unreasonable interference, without any regard whatever to the legal right of defendant to operate its laboratory, thus omitting another important factor in the case. Bradbury Marble Co. v. Laclede Gaslight Co., supra, 128 Mo.App. loc. cit. 111, 106 S.W. loc. cit. 599. The business of defendant was a lawful one. The operation of the coal burning laboratory did not constitute a nuisance per se. Defendant could operate its laboratory even though it emitted gases and odors which caused some discomfort and annoyance to plaintiff, provided it kept within reasonable bounds.. Only if its operation is unreasonable, e. g., if the injury substantially interferes with the ordinary comfort and enjoyment or materially diminishes the value of plaintiff's legitimate use of his property, so that the harm or damage caused is greater than one ought to be expected to bear under all of the circumstances, does a lawful business become a nuisance for which it will be required to respond in damages. Powell v. Brookfield Pressed Brick & Tile Mfg. Co., supra; Clinic & Hospital v. McConnell, supra.

Because No. 1 was confusing and misleading and for failure of the court to instruct the jury on the recognized guiding factors to be considered and weighed in determining whether defendant's acts constituted a nuisance, the action of the court in granting a new trial should be upheld.

 For whatever assistance it may be on a retrial of the case we will consider briefly defendant's objections to No. 7. Defendant's claim that the first paragraph was indefinite and permitted the jury to guess at a figure and go to any lengths in making an award is not well taken. McCracken v. Swift & Co., supra. Defendant urges that there was no evidence to support the second paragraph of No. 7, thus raising the question whether plaintiff's evidence showed a loss of profits with reasonable certainty. In order satisfactorily to establish loss of profits in the case of an established business it is competent, Cantrell v. Knight, Mo.App., 72 S.W.2d 196, loc. cit. 200, and indispensable, Morrow v. Missouri Pac. R. Co., 140 Mo.App. 200, 123 S.W. 1034, to prove the income and expenses of the business for a reasonable time anterior to its interruption, thus establishing net profits during the previous period. Documentary evidence in the form of profit and loss statements showing total receipts, cost of merchandise sold, gross profit, total operating expenses, net operating profit or loss, miscellaneous income and total net profit for the years 1951 and 1952 and for the first five months of 1953 was introduced in evidence. Plaintiff showed that he operated under a 5% beer license until October 13, 1950 when he received a license enabling him to sell liquor by the drink. After receiving the liquor license plaintiff's business increased in 1950 and through 1951 "but in '52 it fell off and continued to fall off all up in '53," notwithstanding he spent nearly $500 for fixtures and equipment and installed a modern horseshoe court to attract customers. Defendant attributes the loss of earnings to the competition of Yacovelli's, a large, new, modern restaurant and tavern directly across the highway from plaintiff's establishment, but whether the loss of earnings resulted from the odors and gases or other causes was for the jury. There was substantial evidence to support a finding with reasonable certainty of a loss of profits resulting from the odors and gases. See Divelbiss v. Phillips Petroleum Co., supra, 272 S.W.2d loc. cit. 844.

For error in Instruction No. 1, however, the Commissioner recommends that the order be affirmed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The order of the circuit court is, accordingly, affirmed and the cause remanded for a new trial.

ANDERSON, P. J., and WALTER E. BAILEY and SAM C. BLAIR, Special Judges, concur.