Wilbur LaBORE, Respondent,

v.

CLARK OIL AND REFINING
CORPORATION, Appellant.

No. KCD 26977.

Missouri Court of Appeals,
Kansas City District.

June 2, 1975.

Kelly Pool, Jefferson City, for appellant;
Hendren & Andrae, Jefferson City, of counsel.

Michael P. Riley, Jefferson City, for respondent; Carson, Inglish, Monaco & Coil, Jefferson City, of counsel.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

This is an action for damages for an alleged wrongful termination of a service station lease. A jury returned a verdict for plaintiff in the amount of $10,000, which was $1,850 more than his prayer. Plaintiff entered a voluntary remittitur for $1,850, and on September 21, 1973, a notice of appeal was filed which recited that the appeal was taken from the judgment of September 17, 1973. After arguments and submission of the case to the court it was discovered that there had been no entry of judgment upon the jury's verdict. The appeal was thus premature. That defect has been remedied. On April 21, 1975, the trial court again took up the motion for new trial, overruled it, accepted the remittitur, and entered judgment "nunc pro tunc" in the amount of $8,150 for plaintiff.

The dispositive issue on this appeal is the sufficiency of plaintiff's evidence of damages and future damages on his written lease of August 14, 1971. For the reasons

hereinafter discussed, that evidence is insufficient and the case must be reversed and remanded for new trial. A collateral issue concerns the admissibility of defendant's pleaded "Surrender of Lease and Assignment of Insurance" which was admitted for the limited purpose of impeachment of plaintiff, he having admitted that he signed it.

■ The relationship of the parties began on June 15, 1970, whereby plaintiff leased the service station and agreed to pay as rental one cent per gallon of gasoline sold. Sometime subsequently, by an undated "Waiver of Rental", defendant agreed to reduce the rental to "none per gallon" and presumably this waiver continued until the lease in question was made between the parties on August 14, 1971. It is upon this lease that plaintiff's claim to relief is premised. Under this latter lease agreement, defendant leased the service station premises and certain fixtures, equipment, machinery and appliances located thereon, for a rental equal to one-tenth of one cent per gallon of gasoline "(Sold from) or (delivered to) the demised premises each day during the term * * *." It appears from the record that this ambiguous provision was treated by the parties as a rental of one-tenth of one cent per gallon of gasoline sold each day. Plaintiff's evidence as to past net profit from the operation of the service station began with the month of January, 1971, and continued through the month of December, 1971. It is apparent that the months of January through July, 1971, with respect to net profits were not referable to the written lease in question of August 14, 1971, even though the previous rental agreement was for a greater amount, i. e., one cent per gallon of gasoline sold per day. But the trouble with plaintiff's proof of past profits so as to show a reasonable probability of loss of future profits (as submitted in Instruction No. 5, claimed by defendant to be erroneous) is that in his own testimony he acknowledged that the figures he presented to the jury included a subsidy

or gratuity paid to him by defendant. The matter arose in this manner: Plaintiff offered a summary of net taxable profits taken from the bookkeeper, as embodied in plaintiff's Exhibit 2. This showed for the entire year of 1971 a figure of $9,359.67, which plaintiff divided by 12, or $779.97, as his damages for loss of future profits which he was asking the jury to award him. "MR. POOL: Does this include voluntary payments in months when you were not making money? MR. RILEY: I object to that. The documents speak for themselves, and they were prepared by Clark. THE COURT: Overruled. MR. POOL: He referred to them as net taxable profit. Does it, Mr. LaBore? THE WITNESS: *I am not sure.* MR. POOL: They paid you money apart from your lease on months you weren't making any money? THE WITNESS: *Subsidies, yes.* MR. POOL: Then I object to it. It doesn't show his net taxable profit, Your Honor. THE COURT: Mr. LaBore, did you pay tax on the sums of money you showed on there and report that as your gross income? THE WITNESS: I am not sure." [Italics added.] On cross-examination: "Q. Now, you testified earlier about your 'net profit' for the year 1971 on this station; and you also told me that that figure included a number of subsidies Clark voluntarily paid you; is that correct? A. Yes. Q. Do you recall about the amount of those? A. No, I don't. Q. It was several thousands of dollars, was it not? A. Could have been. Q. Those were payments made to you because the station wasn't doing very well, wasn't it? A. Certain months, yes, sir."

"The same rules applicable to recovery of lost profits generally are applied to injuries to established businesses. Thus, the prospective profits from an established business, prevented or interrupted by breach of contract, are recoverable when it is proved (1) that the loss of profits may reasonably be supposed to have been within the contemplation of the defaulting party when the contract was made as the probable re-

sult of a breach, (2) that it is reasonably certain that such profits would have been realized except for the breach of contract, and (3) that such lost profits can be ascertained and measured, from the evidence introduced, with reasonable certainty." 22 Am.Jur.2d Damages, § 177, p. 252. See the quote, and other cases and authority cited, in Coonis v. Rogers, 429 S.W.2d 709, 714 (Mo.1968), " '[B]ut proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period, is indispensable. Fuchs v. Curran Carbonizing & Engineering Co., Mo.App., 279 S.W.2d 211.' " Plaintiff's proof in this case of his past net profits is insubstantial by reason of his acknowledgment that he received subsidies or gratuities from defendant during 1971, and his inability to testify that his "net taxable profits" did or did not include subsidies. Any award of the jury for loss of future net profits is thus not supported; the award would have to be based upon speculation and conjecture. Warner v. Southwestern Bell Telephone Company, 428 S.W.2d 596, 604[20–26] (Mo.1968). Here the giving of Instruction No. 5, submitting to the jury the matter of future damages is in error, necessitating a new trial.

The "Surrender of Lease and Assignment of Insurance" was pleaded by defendant as an affirmative defense. It is dated January 17, 1972, and recites, "WHEREAS, the lessee is desirous of yielding up possession of the premises and of being absolved from further liability for the payment of rent and all other liabilities under said lease; and WHEREAS, the lessor is willing to accept the surrender of the possession of the premises; * * *." Plaintiff testified that he signed the lease but did not know that he did so; it was among other papers which he signed which he acknowledged had to do with a surrender of the lease; and he had not been given a copy of the surrender and he never agreed to it. When offered, the surrender was objected to upon the ground that it was not executed by defendant's marketing vice president under the clause of the original lease, "This lease constitutes the entire agreement and understanding between the parties hereto, superseding all previous leases and no *modification* or *waiver* of any of the provisions hereof, nor extension except as otherwise provided for herein, shall be binding upon lessor unless in writing and signed by LESSOR's Marketing Vice President." [Italics added.] The surrender was signed by plaintiff and "Clark Oil & Refining Corporation by D. W. DeNeff" who testified that he was defendant's district manager. Plaintiff's position was that the surrender was a modification which could not be made unless executed on behalf of the defendant by its marketing vice president, and since it was not, the surrender was not mutually binding. The court excluded the surrender except for the limited purpose of impeachment of plaintiff or as an admission against interest on his part. There was no offer of proof of the document for defense purposes, and an instruction that the jury should find for defendant if it is found that plaintiff signed and delivered the surrender of lease to defendant was refused. No point is made here as to that refusal, nor is any expression made by this court as to the correctness of the instruction. The evidence is that defendant took possession of the station after surrender and plaintiff departed therefrom. If properly proved, offered and submitted, the lease surrender is certainly a defense to plaintiff's claim. Certainly it is not a modification or a waiver. Van Deusen v. Ruth, 343 Mo. 1096, 125 S.W.2d 1 (1938); Trustee Co. v. Bresnahan, 119 Colo. 311, 203 P.2d 499 (1949); 76 C.J.S. Release § 2, p. 629. See also 51C C.J.S. Landlord & Tenant § 120, et seq., p. 388, et seq., and particularly § 128, p. 410.

The judgment is reversed and the case remanded for new trial.

All concur.