Andrew FRANK, et al., Respondents,

v.

ENVIRONMENTAL SANITATION MANAGEMENT, INC., Appellant.

No. 66244.

Supreme Court of Missouri, En Banc.

April 2, 1985.

Rehearing Denied April 30, 1985.

Thomas H. Rost, Charles R. Miller, Jefferson City, for appellant.

F. Joe DeLong, III, Jefferson City, John E. Turner, Kansas City, for respondents.

BILLINGS, Judge.

Plaintiff landowners sued Environmental Sanitation Management, Inc., [ESM], owner of a landfill, and the individuals owning ESM, for damages by reason of ESM's maintenance of a permanent nuisance. A jury awarded plaintiffs actual damages against ESM and the court of appeals affirmed. We granted transfer to reexamine existing law and review the case as an original appeal. Mo. Const. art. V, § 10, 1945. We affirm.

ESM opened the landfill in 1973 and operated it until 1979. The landfill was located near Jefferson City and on land that had previously been used for farming. Although the land was not of the proper amount or type of soil to insure leachate would not escape into the groundwater, it was assumed leachate could be contained by proper management.

A creek runs along a part of the landfill and across lands of plaintiffs. Plaintiff used their lands to farm, raise beef cattle, and maintain dairy herds. The water in the creek had been used by plaintiffs in their various farming operations since the 1950's.

ESM deposited all types and kinds of household, commercial and industrial garbage and waste in the landfill, including paint thinner, chemicals, fingernail polish and remover, hand cream, perfume, sewage sludge, oil and dead animals. As waste was deposited in an area of the landfill, it would be compacted and a layer of soil spread over it. This regular procedure was followed until the particular area was full. Then a final layer of soil was applied and the area seeded.

Rainwater and surface water can infiltrate the compacted layers, or "cells", of the landfill. Such water picks up contami-

nation from the organic and chemical wastes. The contaminated water moves both down and laterally and can invade underground and surface sources of fresh water—such as the creek. The contaminated water, together with the residue it carries, is called leachate—described as polluted, discolored, foul-smelling scum.

In 1974 there was a small outbreak of leachate at the landfill but it was quickly brought under control. However, beginning in 1977 substantial amounts of leachate from the landfill ended up in the creek. The creek was still polluted with leachate at time of trial in November, 1982. Prior to 1977 the creek water was clean and pure and free of pollution. Plaintiffs were able to use it in their farm operations, including the watering of their livestock. After 1977 the leachate polluted the stream to the extent that the water was dirty and discolored; the creek and adjoining areas had the odor of decaying organic material described as smelling like rotten eggs or hog manure. Aquatic life in the creek died. Because the leachate polluted the creek water with certain chemicals considered harmful to humans and animals, plaintiffs prevented their livestock from drinking the water. Additionally, there was expert testimony that the continued leachate contamination of the creek had permanently reduced the value of plaintiffs' lands.

Defendant contends the verdict directing nuisance instruction was improper because

the pleadings and evidence did not show that an *intentional* act caused the leachate to escape. The trial court used MAI 22.06 as the nuisance verdict director for all plaintiffs:

> Your verdict must be for plaintiffs and against defendant Environmental Sanitation Management, Inc., if you believe:
>
> First, plaintiffs used their property as a farm, and
>
> Second, defendant Environmental Sanitation Management, Inc. operated a landfill upstream to plaintiffs' farm, and
>
> Third, ill-smelling odors and leachate escaped from defendant Environmental Sanitation Management, Inc.'s premises onto plaintiffs' property and this substantially impaired plaintiffs' use of their property, and
>
> Fourth, such use by defendant Environmental Sanitation Management, Inc. of its property was unreasonable.

We recognize there is a conflict between the instruction and its notes on use.[1] The notes on use say the instruction has limited application as explained in the Committee's Comment. The comment cites as authority the Restatement (Second) of Torts § 822 (1965) which requires a focus on a defendant's conduct.[2] The instruction makes no mention of defendant's conduct. Defendant relies upon the *Restatement* view. We

---

1. This conflict was discussed in Comment, The Law of Private Nuisance in Missouri, 44 Mo.L. Rev. 20, 53 (1979). The comment correctly concluded that the verdict director is consistent with Missouri law, which does not require a plaintiff to prove negligence or intent. The comment continued to explain that there is little authority for the Committee to have adopted the Restatement:

 > John S. Divilbiss served as Reporter for MAI from 1962 until his death in 1967. His unpublished notes cite *Clinic & Hosp., Inc. v. McConnell,* 241 Mo.App. 223, 236 S.W.2d 384 (K.C.1951) and *Fuchs v. Curran Carbonizing & Eng'r Co.,* 279 S.W.2d 211 (St.L.Mo.App.1955) as authority for the proposition that Missouri had adopted the Restatement. In Clinic, the court cited § 822 of the Restatement and listed factors for determining whether a private nuisance exists. The court did not discuss

whether intent and/or negligence are required in order to maintain a private nuisance action. A subsequent case, *Lee v. Rolla Speedway, Inc.,* 494 S.W.2d 349 (Mo.1973), used the Restatement balancing test in a similar manner, but did not mention the requirement of intent and/or negligence.

 *Id.* at 53 n. 251.

2. **Committee's Comment (1969 New)**

 Section 822, the Restatement (Second) of Torts § 822 (1965), states:

 The actor is liable in an action for damages for a non-trespassory invasion on another's interest in the private use and enjoyment of land if,

 (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and

hold the *Restatement* does not accurately reflect Missouri's nuisance law and the trial court properly instructed the jury.

 Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property. *Crutcher v. Taystee Bread Co.*, 174 S.W.2d 801 (Mo.1943). The focus is defendant's unreasonable interference with the use and enjoyment of plaintiff's land. *Rebel v. Big Tarkio Drainage District*, 602 S.W.2d 787, 791 (Mo.App.1980). Nuisance is an effect rather than a cause of tort liability and conduct antecedent to the interference may be irrelevant. *Id.*[3] Nuisance is a condition and does not depend on the degree of care used; it depends on the degree of danger existing with the best of care. *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969). The law of nuisance recognizes two conflicting rights: property owners have a right to control their land and use it to benefit their best interests; the public and neighboring land owners have a right to prevent unreasonable use that substantially impairs the peaceful use and enjoyment of other land. *Clinic & Hospital, Inc. v. McConnell*, 241 Mo.App. 223, 236 S.W.2d 384 (1951). The *unreasonable use* element of nuisance balances the rights of adjoining property owners. *Looney v. Hindman*, 649 S.W.2d 207 (Mo. banc 1983).

The crux of a nuisance case is unreasonable land use. The broad categories within which previous cases fit illustrate ways to prove unreasonable land use; they are not exclusive. It may be beneficial for plaintiffs to attempt to plead their cases into recognized categories but the law of nuisance, which is based on a balancing of interests, must remain uniquely receptive to new ways of demonstrating unreasonable use.

 The easiest way to show a nuisance is to prove defendant's conduct is unreasonable as a matter of law. This category may be called nuisance per se. In *Clutter v. Blankenship*, 346 Mo. 961, 144 S.W.2d 119 (1940), a funeral home in a purely residential neighborhood was held to be a nuisance. The unreasonable use element was assumed and an injunction issued. There was no allegation of improper conduct. The court cited previous authority rather than the facts of the case to demonstrate the injury funeral homes impose on residential neighborhoods. Operation of a landfill in a rural area is not a nuisance per se.

 A nuisance may be found as a factual matter independent of prior cases

(b) the invasion is substantial; and
(c) the actor's conduct is a legal cause of the invasion; and
(d) the invasion is either
(i) intentional and unreasonable; or
(ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct.

The above instruction is intended to cover only those cases where the invasion is intentional and unreasonable.

The Restatement points out in § 825 comment d:

An invasion of another's interest in the use and enjoyment of land is intentional when the actor
(a) acts for the purpose of causing it; or
(b) knows that it is resulting or is substantially certain to result from his conduct.

Comment b following states:

Most of the litigation over non-trespassory invasions of interests in the use and enjoyment of land involves situations in which there are continuing or recurrent invasions resulting from continuing or recurrent conduct. In such cases the invasion resulting from the actor's conduct may be either intentional or unintentional, but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.

3. *Rebel* indicated, in dicta, that modern law requires intentional, negligent, reckless or abnormally dangerous conduct by defendant. The court noted cases that disagree with this position. To the extent *Rebel* holds nuisance cannot be maintained without proof of the described conduct, it is disapproved. A more accurate statement of the law may be found in *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969). The court held defendant's negligence, intention, design, or motive are immaterial to his liability for nuisance.

and conduct. In *Crutcher v. Taystee Bread Co.*, 174 S.W.2d 801 (Mo.1943), the Court noted:

> There is no exact rule or formula by which the existence of a nuisance or the nonexistence of a nuisance may be determined. 'Necessarily each case must stand upon its own special circumstances, and no definite rule can be given that is applicable in all cases, but when an appreciable interference with the ordinary enjoyment of property, physically, is clearly made out as the result of a nuisance, a court of equity will never refuse to interfere, . . . .' Wood, Nuisances, § 801

*Id.* at 805. In *Kelley v. National Lead Co.*, 240 Mo.App. 47, 210 S.W.2d 728 (1948), plaintiffs were injured because of fumes and mists that eminated from defendant's plant. Although the court held for defendants on a negligence issue it emphasized that it could sustain an award if nuisance was its basis. As a factual matter defendant's use of land was unreasonable. In *Fuchs v. Curran Carbonizing and Engineering Co.*, 279 S.W.2d 211 (Mo.App. 1955), a tavern owner sued for injuries sustained because defendant's plant emitted air pollution. A submissible case of nuisance was established on three facts. First, emissions of fumes from defendant's plant invaded plaintiff's premises. Second, the emissions injured plaintiff. Third, proper circumstances were shown—probably unreasonable use. In *Clark v. City of Springfield*, 241 S.W.2d 100 (Mo.App.1951), plaintiff proved defendant operated a sewer with a drainage system near his property. When too much water accumulated the drainage system would flood and deposit garbage and manure on plaintiff's land. This was a nuisance whether the action

was done intentionally or negligently. In *Greene v. Spinning*, 48 S.W.2d 51 (Mo. App.1931), the fact that cars pulling into defendant's filling station cast bright lights into plaintiff's house created an actionable nuisance. Finally, in *Haynor v. Excelsior Springs Light, Power, Heat & Water Co.*, 129 Mo.App. 691, 108 S.W. 580 (1908), the court held defendant liable in nuisance because it operated a gas manufacturing plant that polluted nearby water and a well. Plaintiff's action arose because defendant used the water course as a sewer, plaintiff sustained injury to her property, and there was a causal connection between the two facts.[4] In the instant case, the verdict director required a finding of unreasonable use. That was sufficient. The jury had sufficient evidence to conclude ESM's use of its land in a manner that created leachate was unreasonable.

Nuisance may also rest upon a continuing known invasion. *Hawkins v. Burlington Northern, Inc.*, 514 S.W.2d 593 (Mo. banc 1974), involved consolidated nuisance suits for damages resulting from the flooding of plaintiffs' property. Construction on defendant's property diverted water and caused floods and the evidence was ample to show a continuing intentional nuisance after the first flooding because numerous complaints were made, and in light of the early and numerous complaints, defendant failed and refused to remedy the situation. Similarly, in *Vaughn v. Missouri Power & Light Co.*, 89 S.W.2d 699 (Mo.App.1935) plaintiffs sued for damages resulting from defendant's operation of a spray pond. Wind carried spouts of water and chemicals which damaged plaintiffs' land. Defendant continued to run the pond after being told of its effects. This was a nuisance. In the instant case the jury had sufficient evidence to conclude defendant continued to

---

**4.** Courts have declined to impose liability for land use that injured adjoining land owners. In *Looney v. Hindman,* 649 S.W.2d 207 (Mo. banc 1983), property owners sued neighbors for damages from water runoffs. Defendants dug a garden and installed a tie border. Plaintiffs alleged the improvements rerouted water onto

their land in destructive quantities. The jury was given an instruction that required a finding of unreasonable land use by defendant. It returned a verdict for defendant. In *Schott v. Appleton Brewery Co.,* 205 S.W.2d 917 (Mo.App. 1947), a brewery was held to be a reasonable use of land and therefore not a nuisance.

operate the landfill after it knew of the leachate problem, even though leachate indicated the landfill contained its capacity.

■ An intentional act may constitute a nuisance. The requisite intent may be merely that "defendant intentionally did an act which happened to interfere with plaintiff's land." Comment, *The Law of Private Nuisance in Missouri*, 44 Mo.L.Rev. 20, 51 (1979). In *Genova v. City of Kansas City*, 497 S.W.2d 555 (Mo.App.1973), the court approved a modified MAI 22.06, which required the jury find: (1) Plaintiff owned the damaged buildings, (2) defendant diverted the normal flow of water, (3) defendant allowed the deterioration of a drain near plaintiff's land, (4) water collected on defendant's land and was discharged on plaintiff's land in unnatural volumes, (5) defendant used his land unreasonably, and (6) plaintiff was damaged as a direct result. A similar instruction was approved in a nuisance suit where defendant's hog farm polluted the air and water on plaintiff's property. *Bower v. Hog Builders Inc.*, 461 S.W.2d 784 (Mo.1970). In the instant case the jury had sufficient evidence to conclude circumstances surrounding the construction of the landfill constituted a sufficiently intentional act to impose liability for a nuisance.

■ Negligence may also constitute a nuisance. In *Rebel v. Big Tarkio Drainage District*, 602 S.W.2d 787 (Mo.App. 1980), plaintiff alleged defendant negligently maintained a levee that caused the flooding of his land. The court allowed a cause of action in negligence to describe a temporary nuisance. It must be noted that negligence is not needed to prove a nuisance. *Hawkins, supra; Proper v. City of Independence*, 328 S.W.2d 55 (Mo.App.1959). Negligence alone does not create a nuisance. *Lentz v. Schuerman Building & Realty Co.*, 359 Mo. 103, 220 S.W.2d 58 (banc 1949); *Bollinger v. Mungle*, 175 S.W.2d 912 (Mo.App.1943). Negligence will only support a finding of nuisance when it constitutes an unreasonable use of land.[5]

■ MAI 22.06 requires the necessary finding of unreasonable land use. It was properly given in the instant case because liability for nuisance may rest on a finding of unreasonable use whether or not the use had been previously encountered. The instruction afforded sufficient flexibility to allow the jury to evaluate the instant case on its particular facts.

■ Second, defendant claims trial court committed error by refusing to give proposed converse instructions. With the exception of the names of the individual plaintiffs, the proposed instructions were identical:

Your verdict must be for defendant Environmental Sanitation Management, Inc. and against Plaintiffs Andrew Frank and Anna Pearl Frank if you believe:

First, defendant Environmental Sanitation Management, Inc. did not act with the purpose of causing ill-smelling odors and leachate to escape onto Andrew and Anna Pearl Frank's property, and

Second, defendant Environmental Sanitation Management, Inc. did not act knowing that ill-smelling odors and leachate were escaping onto Andrew and Anna Pearl Frank's property as a result of its conduct or knowing that ill-smelling odors and leachate were substantially

---

5. There is an old distinction in nuisance cases that inaccurately describes this requirement. Things lawfully done which may cause injuries if done improperly were held to need proof of negligence before constituting a nuisance. Things which caused injuries by their very nature were held to not need proof of negligence before constituting a nuisance. *Greene v. Spinning*, 48 S.W.2d 51 (Mo.App.1931); *Schindler v.* *Standard Oil Co.*, 207 Mo.App. 190, 232 S.W. 735 (1921). It was thought that the nuisance must be inherent in the source of injury. *Pearson v. Kansas City*, 55 S.W.2d 485 (Mo.1932). It is more accurate to say negligence may constitute an unreasonable use of land and thereby create a nuisance, but negligence alone does not create the nuisance.

certain to escape onto Andrew and Anna Pearl Frank's property as a result of its conduct.

Defendant's affirmative converse instructions are governed by MAI 33.01. "The facts hypothesized in an affirmative converse instruction must be sufficient in law to defeat plaintiff's claim" MAI 33.01 at 489. *See Morse v. Johnson*, 594 S.W.2d 610 (Mo. banc 1980); *Oliver v. Bi-State Development Agency*, 494 S.W.2d 49 (Mo. 1973). Defendant's hypothetical facts merely eliminate two of many ways to show unreasonable land use. The converses were properly rejected.

■■■■ Third, defendant claims the jury should have been instructed on damages for a temporary rather than a permanent nuisance. Damages for a permanent nuisance are measured by the difference in the land's market value immediately before and after injury; damages for temporary nuisances include the decrease in rental or useable value of property during the injury. *Spain v. City of Cape Girardeau*, 484 S.W.2d 498 (Mo.App.1972). The character of the source of injury often distinguishes temporary and permanent nuisances. *Rebel v. Big Tarkio Drainage District*, 602 S.W.2d 787 (Mo.App.1980). A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible. *See Stewart v. City of Springfield*, 350 Mo. 234, 165 S.W.2d 626 (banc 1942); *Bartlett v. Hume-Sinclair Coal Mining Co.*, 351 S.W.2d 214 (Mo.App.1961). Evidence showed expensive and sophisticated leachate control plans failed to stop the outbreaks. This justified the instruction on permanent damages. *Ruppel v. Ralston Purina Co.*, 423 S.W.2d 752, 756 (Mo.1968). Evidence also showed a stigma from repeated leachate outbreaks permanently devalued plaintiffs' property. This independently justified the instruction on permanent damages. *Amish v. Walnut Creek Development, Inc.*, 631 S.W.2d 866 (Mo.App.1982). The instruction on permanent damages was properly given and the

record reveals sufficient evidence to support the jury's findings.

■■■■ Fourth, defendant claims trial court erred by sustaining an objection to certain testimony. Defense counsel asked James Penfold, an expert with DNR, a hypothetical question:

> Mr. Penfold, assuming that ESM maintains any seep that might develop on the landfill area, that isn't picked up by the present collection system, and assuming the hauling capabilities that you testified to, do you have an opinion as to whether or not this leachate collection system is going to work in terms of preventing leachate from getting into the creek.

Trial court sustained plaintiff's objection that the question "assumes facts into the future and therefore calls for the witness to speculate and would be an improper question because there could be no evidence as to what will be done in the future." No offer of proof was presented by defense counsel. Generally, appellate courts will not review excluded evidence without a specific and definite offer of proof. *Karashin v. Haggard Hauling & Riggins, Inc.*, 653 S.W.2d 203 (Mo. banc 1983). We carved out an exception to this rule in *State ex rel. State Highway Commission v. Northeast Building Co.*, 421 S.W.2d 297 (Mo.1967). In *Northeast* we recognized the purpose of an offer of proof is to insure the trial court and opposing counsel understand the proposed evidence. Additionally, an offer of proof enables appellate courts to understand claims of error. In *Northeast* an offer of proof was not needed because everybody at trial knew what the testimoy would be. Because the objection was based on a category of evidence and could be adequately reviewed, we created an exception to the rule requiring offers of proof. This exception is very narrow. First, it requires a complete understanding, based on the record, of the excluded testimony. Second, the objection must be to a category of evidence rather than to specific testimony.

Third, the record must reveal the evidence would have helped its proponent. *See Brooks v. Travelers Insurance Co.*, 515 S.W.2d 821 (Mo.App.1974). The instant evidence does not fit into the *Northeast* exception. The objection was to specific content not to a category of questioning. In *Northeast* we could review whether piecemeal valuation was improper. Here, we would have to guess whether the content of the witness' answer would have been improper evidence. The point was not properly preserved for review. *See State ex rel. State Highway Commission v. Ankrom*, 588 S.W.2d 172 (Mo.App.1979).

We have reviewed defendant's remaining allegations of error and we incorporate that part of the court of appeals' opinion which addresses the allegations.

"Next, defendant asserts certain evidence was erroneously admitted at trial. Defendant first complains of the admission of evidence that it had violated Missouri's Clean Water Law.

"In December of 1980, defendant and the State of Missouri entered into a stipulation and consent order in resolving an action brought by the state charging defendant with various violations in the operation of the landfill. Defendant motioned in limine to exclude reference to the consent order and plaintiffs agreed not to raise the issue. On the third day of trial, defendant produced evidence approximately $328,000 had been spent by it to arrest the leachate problem. The next day, plaintiffs, in conference with the trial court, sought permission to refer to the consent order to shed light on the evidence of defendant's expenditures. The trial court granted permission for plaintiffs to ask defendant's president if the Missouri Department of Natural Resources pressured it to make changes in the landfill's operation.

■ "When the president was asked this question he answered 'no.' The trial court then permitted plaintiffs to ask whether the Attorney General had brought an action against defendant for violations of the Clean Water Law. The president stated the action had to do with a notching of the leachate collection system. There was no evidence of the outcome of the action or the consent order. In controlling the scope and content of cross-examination, the trial court enjoys broad discretion. *Wilkins v. Cash Register Service Co.*, 518 S.W.2d 736, 750 (Mo.App.1975). Here the cross-examination was closely supervised. We find no abuse of the court's discretion in allowing plaintiffs' questioning in response to defendant's evidence of the amount spent to improve the landfill.

■ "Defendant argues three exhibits should not have been admitted because they contain witnesses' opinions as to conclusions of law. This ground for objection was never submitted to the trial court when the exhibits were introduced nor in the motion for a new trial. A party may not advance on appeal an objection to evidence different from the one presented to the trial court. *Phillips Pipe Line Co. v. Ashley*, 605 S.W.2d 514, 518 (Mo.App.1980).

"Defendant also complains the trial court allowed witnesses Crawford and Williford to testify because their testimony was 'irrelevant, injected a false issue, and was privileged.' This part of the point relied on presents nothing for review. *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978). Our reading of the briefs and the record on appeal convinces us no reversible error was uttered out of the mouths of Crawford and Williford when weighed with the objections interposed by defendant.

■ "Finally, defendant complains the trial court abused its discretion by denying its motion for new trial and remittitur on the basis of excessive verdicts. Plaintiff Hoskins said his loss was $27,000, a real estate expert said it was $12,900 and the jury awarded $6,500. Plaintiff Currender put his loss at $109,250; a real estate expert at $71,134 and the jury awarded $43,888. Plaintiff Frank put his loss at

$75,000; a real estate expert at $41,000; and the jury awarded $23,222. The matter of excessiveness is to a great extent within the province of the trial court. *Morris v. Israel Bros., Inc.*, 510 S.W.2d 437 (Mo. 1974). Because the verdicts were within the evidentiary limits, we will defer to the discretion of the trial court."

Judgment affirmed.

RENDLEN, C.J., and HIGGINS and GUNN, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

BLACKMAR, Judge, concurring.

I wholly concur in Judge Billings' scholarly and lucid opinion.

This, for me, is not a difficult case. The defendant, for its own profit, established and maintained a landfill in which solid and liquid waste were buried. A deleterious substance escaped into normal drainage channels and caused damage to downstream owners. It is entirely proper that the proprietor, rather than the owners, bear the loss. The principle is similar to that applied in products liability cases such as *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984).

Just as in products liability cases, the defendant's fault should not be an issue. I agree that "reasonableness of use" is an appropriate jury submission.

The principal opinion does not "turn back the hands of time" nor does it invoke a "long discredited view." The dissent quotes numerous learned scholars, but a substantial number of them wrote before the development of products liability law.

There seems to be a lack of synchronization between the portions of Restatement of Torts Second, dealing with products liability (§ 402A) and nuisance (§ 822). But restatements are not law.

The principal opinion correctly analyzes and harmonizes the earlier Missouri cases and recognizes that § 822 does not accurately reflect our law. I find both clarification and modernization.

WELLIVER, Judge, dissenting.

I respectfully dissent.

Rather than clarify and modernize the law of nuisance, the principal opinion opts to turn back the hands of time and invoke the long, discredited view of liability without fault in nuisance. For over a century, courts in this State and elsewhere have struggled with the basis for liability in private nuisance, and it is time that Missouri pull nuisance out of the "legal garbage can" [1] and give it a proper place in our law.

The law of nuisance largely developed through a series of historical accidents, and the term has been variously used with little or no analysis. Professor Prosser wrote "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'" W. Prosser & W. Keeton, *Prosser & Keeton on the Law of Torts* at 616 (1984). Similarly, Professors Cunningham, Stoebuck and Whitman write that "[i]n tort law the word 'nuisance' has had an extremely elastic meaning; sometimes it is little more than a pejorative term, a weasel word used as a substitute for reasoning." R.A. Cunningham, W.B. Stoebuck, & D.A. Whitman, *The Law of Property* 413 (1984). *See also* 5 *Powell On Real Property* § 704; Anderson, "The Rylands v. Fletcher Doctrine in America: Abnormally Dangerous, Ultrahazardous, or Absolute Nuisance?," 1978 Ariz. State L.J. 99; Seavey, "Nuisance: Contributory Negligence and Other Mysteries," 65 Harv.L.Rev. 984 (1952).

1. Prosser, "Nuisance Without Fault," 20 Tex.L. Rev. 399, 410 (1942).

The principal opinion gets caught in this "impenetrable jungle" and errs in suggesting that the defendant's legal fault is not an essential element in this nuisance action. The principal opinion holds that a defendant's conduct is not an element of liability in nuisance. For that reason, the opinion rejects the Notes on Use to MAI 22.06 and holds that MAI 22.06, which "makes no mention of defendant's conduct," properly reflects Missouri law. I cannot agree with these assertions because the Notes on Use properly reflect the law of nuisance. To be held liable, the defendant must have acted intentionally or negligently. Because this element is not made clear in MAI 22.06, I would no longer sanction the use of MAI 22.06. For this same reason I believe the trial court erred by refusing to give the defendant's proposed converse instructions.

A careful examination of nuisance law illustrates that legal fault generally has been a prerequisite for holding a defendant liable. "[T]oday it is recognized that one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Copart Industries, Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 971 (1977). *See e.g., Sandifer Motors, Inc., v. City of Roeland Park*, 6 Kan.App.2d 308, 628 P.2d 239 (1981); *Melendres v. Soales*, 105 Mich.App. 73, 306 N.W.2d 399 (1981); *Highview North Apartments v. County of Ramsey*, 323 N.W.2d 65 (Minn.1982); *Nelson v. D.J.C. Plywood Corp.*, 154 Mont. 414, 465 P.2d 314, 321 (1970); *Phillips Ranch, Inc. v. Banta*, 273 Or. 784, 543 P.2d 1035, 1039 (1975); *Vincent v. Salt Lake County*, 583 P.2d 105 (Utah 1978); *Pope v. Edward M. Rude Carrier Corp.*, 138 W.Va. 218, 75 S.E.2d 584 (1953); *CEW Management*

*Corp. v. First Federal Savings & Loan Ass'n*, 88 Wis.2d 631, 277 N.W.2d 766 (1979). Authorities are in apparent agreement that "[a]n invasion of another's use and enjoyment of land which gives rise to liability for a nuisance may be either intentional or unintentional. Liability for an unintentional invasion of the use and enjoyment by another of his land is imposed by applying the rules relating to negligent and reckless conduct, whereas an intentional interference is actionable where it is both substantial and unreasonable." 58 Am. Jur.2d *Nuisances* § 32, § 19. One commentator notes that "[n]uisance liability is normally predicated upon intentional conduct of the defendant; but there is also an area of law where nuisance liability overlaps both liability for negligence and liability for engaging in ultrahazardous activities." 5 *Powell On Real Property* § 705. *See also* Beuscher & Morrison, "Judicial Zoning Through Recent Nuisance Cases," 1955 Wis.L.Rev. 440, 441; Keeton, "Trespass, Nuisance, and Strict Liability," 59 Colum.L.Rev. 457, 460–62, 473–74 (1959); Prosser, *supra;* Seavey, *supra.* The Restatement (Second) of Torts would require that the defendant either act intentionally, negligently, recklessly or engage in ultrahazardous activity.[2] Some authors go so far as to suggest that the tort should be limited to intentional conduct. *See* R.A. Cunningham, W.B. Stoebuck, & D.A. Whitman, *supra*, at 413. Prosser and Keeton, for example, observe that "[p]rivate nuisance is a tort that protects the interest of those who own or occupy land from conduct committed with the intention of interfering with a particular interest—the interest in use and enjoyment. It is, therefore, like trespass, a tort arising from the intentional interference of an interest in land that is deemed worthy of legal protection." W. Prosser & W. Keeton, *supra*, at 622.

Most nuisance cases rest upon intentional conduct, regardless of the degree of care exercised by the defendant. Rabin, "Nui-

---

**2.** Restatement (Second) of Torts §§ 822–40.

sance Law: Rethinking Fundamental Assumptions," 63 U.Va.L.Rev. 1299, 1317 (1977). Nuisance cases based upon intentional conduct generally fall within one of the following categories:

Analytically, cases that do not involve a personal entry whereby damage to land or annoyance to the occupants thereof has resulted can be classified into four general categories: (1) those in which the defendant knew that his conduct would cause or was causing invasions of plaintiff's land or the airspace above by things or forces and in which he knew that it would have or was having the effect of causing substantial damage or annoyance; (2) those in which defendant knew that his conduct would cause or was causing invasions of plaintiff's land or airspace but in which he did not know that the effect would be or was to cause substantial damage or annoyance; (3) those in which neither forces nor things were projected upon the land of plaintiff but in which defendant's conduct or activity produced to his knowledge unpleasant or depressing emotions and feelings of a substantial intensity.

Keeton, *supra*, at 461. Additionally and fourth, while some other cases are often couched in terms of strict liability, the better view is that the defendant is deemed liable because he knowingly or intentionally did that which is unlawful or is substantially certain to cause harm.[3] *See* Anderson, *supra*, at 104; Faulk, *"Absolute Liability."* "Historical Perspectives and Political Alternatives," 37 Okla.L.Rev. 569, 571–72 (1984). Judge Cardozo explained that "[h]e is not to do such things at all, whether he is negligent or careful." *McFarlane v. City of Niagara Falls*, 247 N.Y. 340, 160 N.E. 391 (1928). One commits an unlawful act—often called a nuisance per se—by knowingly creating an unreasonable danger to others even though exercising care to avoid harm. *Id.* at 392. *See also Heeg v. Licht*, 80 N.Y. 579 (1880) (the leading New York case relied upon by Cardozo, J.). Missouri cases have explained these situations by noting the "difference where the injurious consequences *may* and *must* result." *Murphy v. Gillum*, 73 Mo.App. 487, 494 (1897). If the injurious consequences must result, then the defendant is said to have acted intentionally because he or she must have anticipated the harm. *Id.* *See also Greene v. Spinning*, 48 S.W.2d 51, 61 (Mo.App.1931); *Schindler v. Standard Oil Co.*, 207 Mo.App. 190, 232 S.W. 735, 736–37 (1921); *Bradbury Marble Co. v. Laclede Gas Light Co.*, 128 Mo.App. 96, 106 S.W. 594, 597 (1902) (quoting *Joyce on Nuisance*.[4] In *Leffen v. Hurlbut-Glover Mortuary*, 363 Mo. 1137, 257 S.W.2d 609 (1953),

---

**3.** Cases involving abnormally dangerous or ultrahazardous activity have plagued the law of nuisance for many decades. In Missouri and elsewhere, courts in the nineteenth century rejected *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868), which purported to impose liability without fault in certain cases involving abnormally dangerous activity. Comment, "The Rylands v. Fletcher Doctrine and Its Standing in Missouri," 18 Mo.L.Rev. 53 (1953). Situations that might have been covered by the doctrine in *Rylands*, therefore, were brought within the ambit of nuisance law thereby creating confusion in the law of nuisance. *See* Seavey, *supra*, at 986. *See also State, Department of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (1983). "Even jurisdictions that reject *Rylands* by name have accepted and applied it under the cloak of various other theories, with strict liability commonly imposed under the sobriquet of 'nuisance.'" *Peneschi v. National Steel Corp.*, 295 S.E.2d 1, 5 (W.Va.1982). *Ry-*

*lands,* however, is not actually a doctrine of liability without fault. *Id.* at 5, 7. *See also* Anderson, *supra*, at 104 ("[t]he law thus imposes liability on anyone who for his own purposes creates a recognizably abnormal risk of harm to others"); *Harper v. Regency Development Co., Inc.*, 399 So.2d 248, 252–53 (Ala.1981). Doubtless because of the problems these cases cause for the law of nuisance, the Restatement (Second) of Torts and a number of jurisdictions now treat this issue apart from the law of nuisance. Restatement (Second) of Torts §§ 519, 520. *See e.g., Harper v. Regency Development Co., Inc., supra*, at 253; *Dye v. Burdick*, 262 Ark. 124, 553 S.W.2d 833, 840 (1977); *Peneschi v. National Steel Corp., supra*, at 10.

**4.** *See* Restatement (Second of Torts § 825(b). Some commentators suggest that liability is based upon the defendant's negligence in not forseeing that in a certain geographical area certain uses are "substantially more injurious"

the Court held that the operation of a funeral home in a residential district was "unlawful." The defendant can be said to have committed a wrongful act by intentionally operating a funeral home in an area where it was substantially certain to cause injury. *See generally* Keeton, *supra,* at 458 ("an actor ... can be just as much at 'fault' by the choice of the location of an activity where the necessary or likely result will be to cause annoyance or discomfort"). The court added an important caveat when it observed that "[i]t may be that, as a result of the enactment of a municipal zoning ordinance, the maintenance and operation of the funeral home at its present location is now lawful and proper. If so, our restraint of a common law nuisance (resulting, not from the operation but solely from the location of the funeral home) would be improper and futile." *Leffen v. Hurlbut-Glover Mortuary, supra,* 257 S.W.2d at 614.

It is from these cases in our State that the principal opinion incorrectly concludes that the defendant's conduct is irrelevant.[5] In such cases, the degree of care exercised by the defendant is immaterial because the defendant acted intentionally, and thus with legal fault.

In cases where the conduct is wrongful either because the defendant is improperly causing noises, smells, vibrations or other harmful effects on the plaintiff's land or in cases where the defendant by the continuance of his activity creates undue risk to structures or persons on the plaintiff's land, it is clear that the activity is wrongful and cannot be made rightful by the fact that the utmost care is used in minimizing harm. Because of this there are many expressions in cases and textbooks that negligence is not essential for a nuisance and that a nuisance may exist even though the defendant is careful. From this generalization it has been held occasionally that even where the defendant's conduct is neither negligent nor ultrahazardous, there is an element in the rules of nuisance which makes the defendant liable for unexpected results, although his conduct was lawful.

Seavey, *supra,* at 986–87. Professor Seavey's remarks accurately describe the error in the principal opinion.

If the defendant's use of the property is neither inherently unlawful nor a dangerous activity, and the defendant does not knowingly or intentionally engage in activi-

---

then the typical uses normally encountered in the area. Rabin, *supra,* at 1318. *See also* Keeton, *supra,* at 459.

**5.** The principal opinion relies heavily upon *White v. Smith,* 440 S.W.2d 497 (Mo.App.1969), where that court held that the nuisance "does not rest or depend upon the degree of care used, but upon the degree of danger existing with the best of care. So, in determining liability for the maintenance of a nuisance, whether defendant was negligent and what his intention, design or motive may have been alike became immaterial." *Id.* at 503. In *White v. Smith,* the court apparently followed the language appearing in such cases as *Pearson v. Kansas City,* 331 Mo. 885, 55 S.W.2d 485, 489 (1932). In *Pearson v. Kansas City,* the Court held that "[t]here must ... be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use ..." *Pearson v. Kansas City, supra,* 55 S.W.2d at 489. *See also Haynor v. Excelsior Springs Light, Power, Heat & Water Co.,* 129 Mo.App. 691, 108 S.W. 580, 582 (1908)

("the fact of negligence is not an essential element, for the reason that a thing is a nuisance when of itself it constitutes an unlawful annoyance or a source of danger to others, and the author of it or the one who maintains it is held liable regardless of the degree of care exercised by him.") The act of knowingly or intentionally doing that which is *unlawful* is *wrongful* and an actionable nuisance. *Pearson v. Kansas City, supra,* 55 S.W.2d at 489–90. In *White v. Smith,* therefore, the court quoted the oft-repeated phrase in these type of cases that "[a]n actionable nuisance may be 'anything *wrongfully* done or permitted ...' " *White v. Smith, supra,* at 503 (emphasis added). I believe the principal opinion errs in its understanding of this line of cases. The area of law allowed recovery when the defendant knew or should have known that his use of the land was unlawful (substantially certain to cause harm either in the particular location or anywhere), and thus these courts properly held that negligence in the ordinary sense of the term was not required.

ty where significant injury is substantially certain to follow, then liability must be predicated upon negligent or reckless conduct. Judge Cardozo held that if the defendant's activity is not wrong or unlawful "in its origin" it "may be turned into a nuisance by negligence in maintenance." *McFarlane v. City of Niagara Falls, supra,* 160 N.E. at 392. As the principal opinion holds, a number of Missouri cases indicate that negligence may but need not support a nuisance action. Negligence is not necessary where legal fault is premised upon an intentional wrong, but absent the intentional wrong negligent conduct must exist.

> A distinction has been made between acts lawful in themselves, done by one upon his own premises, which may result in injury to another if not properly done or guarded, and those which in the nature of things must so result; in the former case, a person could only be made liable for actual negligence in the performance of the act or mode of maintaining it ... The one can only become a nuisance by reason of the negligent manner in which it is performed or maintained ...

*Greene v. Spinning, supra,* at 61 (quoting 46 C.J. 664). The soundness of this approach becomes evident when one realizes that an element of nuisance is the unreasonable use of one's land.[6] If the use of the land is not unlawful or inherently dangerous, or if the defendant does not intentionally use his or her land knowing that harm is resulting or substantially certain to follow, it is hard to see how the defendant can be said to be using his land in an unreasonable manner. In the case at bar, for example, the operation of the landfill in the particular location is not an unreason-

able use—it is neither unlawful nor inherently dangerous. Nor has it been claimed that the defendant operated the landfill knowing that harm to the plaintiff was substantially certain to follow.[7] Thus, it is not the actual use of the land which can be said to be unreasonable or the cause of the harm. Rather, it is the way in which this particular use was maintained that caused the harm. Just as "[a]n intentional invasion of another's interest in the use and enjoyment of land is unreasonable unless the utility of the actor's conduct outweighs the gravity of the harm,"[8] so too it is the negligent or reckless use of one's property that makes the use unreasonable.

Because I believe that both the majority of jurisdictions do and the law of this state should require the presence of legal fault for liability in nuisance, I dissent from the principal opinion. I would urge the redrafting of MAI 22.06.

---

6. *See generally Neyland v. Schneider,* 615 S.W.2d 285, 286–87 (Tex.Civ.App.1981). "The conclusion of 'unreasonableness' depends then upon liability-inviting conduct of the defendant plus a finding that this conduct violates a protected interest of the neighbor-plaintiff." 5 *Powell On Real Property* § 704.

7. There might be liability if, as the principal opinion suggests, there was a continuing known invasion, thereby establishing intent. This, however, is a factual question and the jury was not so instructed.

