**SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiff-Appellant,**

v.

**UNITED VIDEO CABLEVISION OF ST. LOUIS, INC.,
Defendant-Respondent.**

No. 51692.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 15, 1987.

Leo E. Eickhoff, Jr., James A. Daugherty, Thad Hollie, Jr., Ann M. Effinger, Thomas J. Horn, St. Louis, for plaintiff-appellant.

R.J. Slater, Padberg, McSweeney, Slater & Merz, St. Louis, for defendant-respondent.

CARL R. GAERTNER, Judge.

This action was instituted by plaintiff, Southwestern Bell Telephone Company, against defendant, United Video Cablevision of St. Louis, Inc., seeking to recover $266,383.91, the alleged cost of furnishing "locate and mark" services rendered in connection with the installation by United Video of underground cable. After a non-jury trial, the trial court made extensive findings of fact and conclusions of law and entered judgment for defendant. Bell appeals, we affirm.

Our review of a judge-tried case is narrowly prescribed. We must sustain the

judgment of the trial court unless there is no substantial evidence to support it; unless it is against the weight of the evidence; unless it erroneously declares or applies the law. *Goldberg v. Charlie's Chevrolet, Inc.*, 672 S.W.2d 177, 178 (Mo.App.1984). Where there is a conflict in the evidence the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony, and we will not substitute our judgment for that of the trial court. *Haynes v. Missouri Property Ins. Placement Facility*, 641 S.W.2d 497, 500 (Mo. App.1982). The judgment of the trial court must be affirmed if it is correct on any theory. *Rosenblum v. Gibbons*, 685 S.W.2d 924, 927 (Mo.App.1984).

United Video was granted authority to construct and operate a cable television system in unincorporated sections of St. Louis County. On August 7, 1981, Bell and United Video executed a license agreement concerning United Video's use of poles and conduits owned by Bell. That agreement, in excess of thirty typewritten pages, expressly provides for advance payment to Bell for rental and wire relocation costs. Subsequently, on March 5, 1982, a pre-construction meeting was held at which representatives of United Video met with agents of Bell and other utility companies. A memorandum, prepared by United Video a short time later from notes taken at the meeting, indicates an agreement that for locate and mark purposes maps would be provided to the utilities on a weekly basis showing where the cable company planned to excavate for the laying of its cable during the following week.

In 1976, the legislature enacted the Underground Facility Safety and Damage Protection Act, §§ 319.010 through 319.-050, RSMo. 1986. Section 319.030, requires Bell to locate and mark its underground facilities within two working days of a request by a person intending to begin an excavation. To that end a system called

ENterprise 9800 has been in place for many years. There has never been a charge for providing this service. In March or April, 1982, Bell set up what it termed a "dedicated crew" to perform locate and mark services for United Video and other St. Louis County cable companies that were beginning to install their equipment. The trial court found there was no written or oral agreement as to any cost to United Video for this locate and mark service.

United Video began installing its underground lines in April of 1982. The installation was substantially completed when United Video was first notified of Bell's intent to charge for this locate and mark service. The first invoice sent by Bell to United Video was dated December 14, 1982. Several more invoices followed at irregular intervals thereafter. The total of all the invoices is $266,383.91. No payment was made by United Video on any of these invoices.

■ Quantum meruit, the sole basis upon which Bell seeks to recover,[1] is based upon an implied promise that a person will pay reasonable and just compensation for valuable services provided at that person's request or with his approval. *General Aggregate Corp. v. LaBrayere*, 666 S.W.2d 901, 909 (Mo.App.1984). The doctrine is founded primarily upon the concept of unjust enrichment which arises from circumstances where the retention of a benefit without paying for it would be unjust. *Lee Bros. Contractors v. Christy Park Baptist Church*, 706 S.W.2d 608, 609 (Mo.App. 1986). "To avoid unjust enrichment, the law implies a promise to pay for services rendered when the evidence discloses that 'one who rendered services did so under circumstances warranting a proper inference that he expected the recipient of the services to pay for them, and that the latter, in accepting benefit of the services, was or should have been aware that they

---

1. Although Bell dismissed a count of its petition seeking to recover on the basis of an oral contract, its evidence was that United Video had agreed to pay the reasonable cost of the dedicated crew. United Video's general manager denied any such agreement. In its findings of fact the trial court found there was no oral or written agreement that United Video would incur any costs for locate and mark services.

were being performed with such expectation.'" *Union Elec. Co. v. Siteman Org. Inc.,* 616 S.W.2d 851, 858 (Mo.App.1981), quoting from *State ex rel. Danforth v. Kansas City Firefighters Local 42,* 585 S.W.2d 94, 97 (Mo.App.1979).

The facts in the instant case, as found by the trial court, indicate neither an expectation of payment nor an awareness of such expectation. On the contrary, the evidence discloses the offer by Bell of two alternative methods of accomplishing its statutory obligation: the Enterprise 9800 system with a two day notice of proposed excavation or the dedicated crew provided with area maps a week in advance of excavation. The testimony of Bell's cable and television coordinator was that under either system the work and the man hours required were the same. The cost to Bell was the same. It was known throughout the industry that no charge was ever made for services rendered through the ENterprise 9800 system, the cost thereof being absorbed by Bell as a business expense. The cost here sought to be recovered from United Video has similarly been written off as a business expense. In contrast to the explicit charges required in the thirty page pole attachment contract, no discussion of payment to Bell for the cost of compliance with its statutory obligation of locating and marking underground facilities occurred at the pre-construction meeting. No request for such payment was made of United Video for eight months after the commencement of the work. Indeed, the installation of underground cable was eighty to eighty-five percent completed before the first bill was received. None of the other utilities performing the same locate and mark services as required by the statute demanded such payment.

The evidence clearly supports the finding of the trial court that Bell did not "experience any additional costs in its unilateral decision to set up and provide locate and mark services to United Video in an alternate and more practical manner than was the usual custom and practice as mandated by the statutes." The effect of this finding precludes any conclusion that United Video has been unjustly enriched. The benefit accepted by United Video was one to which it was entitled under the law. No detriment was suffered by Bell by reason of the alternate method of complying with its obligations. The equities reflected by the evidence fail to warrant invocation of the doctrine of quantum meruit.

Having determined the trial court correctly found that Bell failed to show it was entitled to relief on the basis of quantum meruit, we need not address Bell's additional points on appeal which challenge the finding that it failed to show its charges were fair and reasonable.

The judgment of the trial court is affirmed.

SNYDER and SIMEONE, Senior Judges, concur.