COLDWELL BANKERS–GORDON
COMPANY REALTORS,
Appellant,

v.

Henry J. WATERS, III, Respondent.

No. WD 41732.

Missouri Court of Appeals,
Western District.

March 27, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Application to Transfer Denied
July 31, 1990.

R. Max Humphreys (argued), Dana L. Frese, Jefferson City, for appellant.

Gary G. Sprick, Fayette, for respondent.

Before NUGENT, C.J., and LOWENSTEIN and FENNER, JJ.

NUGENT, Chief Judge.

Plaintiff Coldwell Bankers–Gordon Company Realtors (hereinafter Coldwell) appeals from the judgment against it on its petition in contract and in quantum meruit and in favor of defendant Henry J. Waters, III, on his counterclaim. We reverse and remand for a new trial.

Coldwell raises the decisive point, among others, that the trial court erred in sustaining an objection to a question asking Mr. Waters whether he believed that he owed the company a commission.

On March 25, 1986, Mr. Waters signed a contract with Coldwell's president, Daniel J. Gordon, to buy two Jefferson City lots of land, owned by Buell Baclesse and listed by Coldwell, 414 and 415 West Dunklin Street. Nevertheless, at about that time, he told Mr. Gordon that he wanted to lease the building on the lot at 414 West Dunklin to a tenant. Mr. Gordon explained that Coldwell expected eight per cent of the total lease as its commission for finding a tenant. According to Mr. Gordon, the defendant responded that "as long as he came out with a net figure which was what he wanted for the building that that didn't make any difference."

Mr. Waters testified, however, that he did not agree to eight percent, deeming it excessive. On the other hand, Mr. Gordon testified that they had several subsequent telephone conversations about leasing the

building. He conceded that Mr. Waters gave him no written authority, however, to find a tenant.

Defendant's employee, McKnight Tire manager Harold A. Wilding, in deposition testimony said that in early April at his employer's request he contacted Tony Gavilsky, an employee of Valley Glass, inquiring whether that company wanted to rent the building from Mr. Waters. They never discussed the amount of the rent or the length of the lease.

In his deposition testimony, Mr. Gavilsky said that no one before Mr. Wilding had contacted him about renting the building.[1] After talking to Mr. Wilding, he contacted Mr. Baclesse, who assured him that he would lease the building to Valley Glass regardless of who owned the property and told him that " 'Gordon's handling the thing.' " Mr. Gavilsky testified that he and another Valley Glass officer had a single meeting with one of the Gordons on April 29 to discuss leasing the property. That same day, he signed a lease for the building and tendered a check for $2,800, one month's rent, which Coldwell deposited into its escrow account. Mr. Gavilsky did not remember who first referred him to Mr. Gordon. He began renovating the building based on Mr. Baclesse's suggestion, " 'Go ahead with your project.' " He discussed the lease with Messrs. Waters and Wilding after signing the lease agreement with the plaintiff. Valley Glass, now under a new name and new ownership, continues to occupy the building.

Mr. Gordon testified that after his meeting with Mr. Gavilsky, he had several telephone conversations with the defendant about leasing to Valley Glass. He mailed to Mr. Waters a "brokerage agreement dated April 28, 1986, that called for an eight percent of gross rent as the commission for finding a tenant. He also mailed a proposal to lease dated April 29, signed by Mr. Gavilsky, that outlined the terms of the lease he and Mr. Gavilsky had negotiated.

He testified that Mr. Waters had indicated these as the terms under which he would lease the building at 414 West Dunklin.

He included a letter, dated April 28, setting out the amounts the defendant would net from the lease and the options and explaining that the amounts exceeded "$2,500.00 per month, which you wanted to net on the building." He wrote that he had "relayed to Mr. Gavilsky your oral acceptance of the terms, which we discussed yesterday,"[2] and that Valley Glass wanted to occupy the building by June 1 and needed to install two overhead doors. Mr. Gordon suggested that they "proceed immediately with the preparation of a formal lease agreement."

He testified that when Mr. Waters returned neither the proposal to lease nor the brokerage agreement, he telephoned the defendant who "said he would bring it down and take care of it when he came down." Defendant Waters never signed either instrument. Mr. Gordon testified that in all the telephone conversations he had with Mr. Waters the defendant indicated approval of the arrangement. He admitted that he "had nothing to do ... with the preparation of the lease" by which the defendant let the building to Valley Glass, but Mr. Waters admitted that it included the terms proposed and submitted by Mr. Gordon.

Mr. Waters' purchase of the lots from Mr. Baclesse closed on June 10. After that, the defendant told Mr. Gordon that he deemed the eight percent commission excessive. He requested that the plaintiff turn over to him Mr. Gavilsky's $2,800 check, but the plaintiff refused.

In December, 1986, the plaintiff filed suit seeking $8,064.00, eight percent of the gross rent the defendant would derive from his three year lease to Valley Glass. The defendant counterclaimed for the $2,800.00 plus $10,000 in punitive damages. After a

---

**1.** Mr. Gordon testified, however, that he had told Mr. Gavilsky of the availability of the property in the autumn of 1985.

**2.** The letter does not specify to whom Mr. Gordon spoke "yesterday." Mr. Waters testified that he believed he had discussed with Mr. Gordon the terms of the lease agreement before receiving Mr. Gordon's letter.

change of venue to Boone County, the parties tried the case to the court.

At trial, plaintiff's counsel asked defendant Waters to affirm or deny the following statement: "I believe I asked you in your deposition and you answered that you don't question Mr. Gordon's entitled to a commission, it's the amount you dispute." The defendant objected on the ground that the statement called for a legal conclusion. During defendant Waters' deposition, plaintiff's counsel had asked, "You're not disputing that you owe him a commission. You're disputing the amount that you owe him[?]" The defendant responded, "I think that's a fair statement, yes."

*Murphy v. Carron,* 536 S.W.2d 30 (Mo. 1976) (en banc), governs review of civil cases tried to the court. The appellate court must affirm the trial court's judgment unless it erroneously applies or declares the law, or no substantial evidence supports it or the weight of the evidence compels a different result. *Id.* at 32.

In its first point on appeal, Coldwell contends that the trial court erred in sustaining the defendant's objection to the question about the defendant's pretrial deposition statement. The plaintiff argues that the question did not ask for a legal conclusion; rather, it inquired whether the defendant had accepted the services of Coldwell's agent, information "directly relevant" to its "cause of action in quantum meruit for the reasonable value of services provided to" the defendant.

■ Thus, we must determine whether the answer Mr. Waters gave in his deposition constituted an admission of fact or a conclusion of law. A party's admissions of fact constitute admissible evidence as admissions against interest; conclusions of law do not. *Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 642 (Mo.1987) (en banc), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988); *White v. Burkeybile,* 386 S.W.2d 418, 422–23 (Mo. 1965); *Wright v. Quattrochi,* 330 Mo. 173, 179, 49 S.W.2d 3, 7 (1932).

■ An admission may also constitute "a statement of an ultimate fact," admissible "since based on facts of which the declarant could be expected to have had knowledge...." *Wills v. Townes Cadillac–Oldsmobile, Inc.,* 490 S.W.2d 257, 260 (Mo. 1973). Generally, courts should admit into evidence a party's admission constituting a statement of ultimate fact. *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 803 (Mo.App.1975).

Wigmore explains that "every case presented in the allegations of pleadings.... includes both facts and inferences; hence, the opponent's admissions will naturally range over both facts and inferences without distinction, e.g., as when a debtor's letter admits that he owes twenty dollars out of the forty-five claimed by the creditor." 4 Wigmore, EVIDENCE, § 1053 (Chadbourn rev. 1972). He reasons that courts should attribute to a party's in-court statements regarding personal affairs the same credit attributed to statements made by that party in everyday life, because we assume a party has "taken pains to ascertain dependable facts...." *Id.*

■ The question to Mr. Waters solicited an admissible statement of fact and the trial court erred in sustaining the objection to its admission into evidence. The undisputed record shows that he and Coldwell Banker engaged in a business relationship lasting more than three months. The record also establishes that during that time, he acquired knowledge of Mr. Gordon's efforts sufficient to enable him to determine whether he had received a service from the plaintiff.

The answer Mr. Waters gave in his deposition supports the inference that he had accepted Coldwell Banker's services. Quantum meruit relies "upon an implied promise that a person will pay reasonable and just compensation for valuable services provided at that person's request or with his approval." *Southwestern Bell Telephone Co. v. United Video Cablevision of St. Louis, Inc.,* 737 S.W.2d 474, 475 (Mo. App.1987). Two concepts inhere in the doctrine: the prevention of unjust enrichment through the unjust retention of an unpaid-for benefit, *Id.* at 475; and allowing recov-

ery for the provision of a service "'as much as he has deserved.'" *Beckemeier v. Baessler*, 270 S.W.2d 782, 787 (Mo.1954).

 Moreover, in a quantum meruit action to recover a commission, the plaintiff need not show that the defendant promised to pay the commission if the defendant acknowledges that "plaintiff performed a valuable service and that he" accepted that service. *General Aggregate Corp. v. La-Brayere*, 666 S.W.2d 901, 909 (Mo.App. 1984). As already noted, the plaintiff includes in its brief a portion of Mr. Waters' deposition in which the defendant admits that he disputes only the amount of the plaintiff's commission rather than plaintiff's entitlement to any commission at all.

The defendant argues that the record does not include this excerpt from his deposition, and therefore "there is nothing for this court to review with respect to this issue." Mr. Waters reasons that the plaintiff may not now include in the record the deposition statement having failed to offer it into evidence.

 "Generally, appellate courts will not review excluded evidence without a specific offer of proof." *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876, 883 (Mo.1985) (en banc). Offers of proof serve to ensure that the trial court and opposing counsel understand the proposed evidence, *State ex rel. State Highway Commission v. Northeast Bldg. Co.*, 421 S.W.2d 297, 300 (Mo.1967), and to enable "appellate courts to understand claims of error." *Frank, supra*, 687 S.W.2d at 883.

 Appellate courts may review excluded testimony without an offer of proof, however, if: based on the record, complete understanding of that testimony exists; the objection refers to a category of evidence rather than to specific testimony; and, the record reveals that the evidence would have helped its proponent. *Id.* at 883–84. Here, the excluded statement explained itself; the defendant objected to it as a conclusion of law; and the record proves its importance to the plaintiff's cause of action. Moreover, the plaintiff moved to reopen the evidence to include the foregoing admission in the defendant's deposition. The trial court denied the motion.

The defendant's pretrial admission becomes the linchpin of the plaintiff's argument in its first point on appeal. "[W]here a party believes a fact upon evidence sufficient to convince him of its existence, his declaration of the existence of that fact, if against his interest, is evidence against him." *Sparr & Green v. Wellman*, 11 Mo. 230, 234 (Mo.1847). *See also Wills, supra*, 490 S.W.2d at 260; *DeArmon, supra*, 525 S.W.2d at 803. If Mr. Waters acknowledged that he owed a commission to Mr. Gordon, and thereby to the plaintiff, he also acknowledged that Coldwell had rendered him a service deserving payment.

Under *Murphy, supra*, the trial court's error of law compels reversal. Thus, we not address the plaintiff's other points on appeal.

Therefore, we reverse the judgment of the trial court and remand for a new trial.

All concur.