STATE of Missouri, Plaintiff–Respondent,

v.

Bobby L. ARCHIE, Defendant–Appellant.

Bobby L. ARCHIE, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

Nos. 18182, 19128.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 28, 1994.

Emmett D. Queener, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant Bobby Archie guilty of robbery, assault, and two counts of armed criminal action. He was sentenced to terms of imprisonment totaling 102 years, some running concurrently and some consecutively. Defendant appeals, and that appeal is Case No. 18182.

After the jury trial, defendant filed a motion under Rule 29.15,[1] seeking relief from the conviction. The motion, as amended by counsel, was denied after an evidentiary hearing. Defendant appeals from that denial, and that appeal is Case No. 19128. The appeals have been consolidated and will be dealt with separately in this opinion.

## Case No. 18182

Defendant's sole point is that the trial court erred in denying his challenge for cause to venireperson Marilyn Lee, in violation of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Art. I, §§ 10 and 18(a) of the Missouri Constitution, "in that Ms. Lee stated that she would be unable to listen to the evidence in the case because of the gory details involved. Furthermore, Section 494.480, RSMo Cum.Supp.1993, is unconstitutional to the extent it eliminates defendant's ability to raise this claim of error, as Article II, Section 1 of the Missouri Constitution prohibits the legislature from exercising judicial power."

■ This court holds that there is no merit in defendant's claim that the trial court erred in denying his challenge for cause to Ms. Lee. In so holding, this court does not rely on § 494.480,[2] RSMo Cum.Supp.1993.

---

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

**2.** "Prior to legislative amendment in 1993, §§ 546.150 and 546.180 gave defendants the right to have a full panel of qualified jurors from which to make peremptory strikes. *See State v. Schnick,* 819 S.W.2d 330, 334 (Mo. banc 1991) (inviting the legislature to change the law). It was reversible error if a court erroneously failed to strike a juror for cause even if the defendant used a peremptory strike to remove the juror. *Id.* Under the new amendment, it is error only if the venireperson is part of the jury. *See* § 494.480.4, RSMo Supp.1993." *State v. Wise,* 879 S.W.2d 494, 512 n. 9 (Mo. banc 1994).

Thus, defendant's attempt to challenge the constitutionality of that statute is moot.

■ Rule 30.06 requires the brief for appellant in a criminal appeal to contain, among other things, a statement of the facts. Rule 30.06(c) requires the statement of facts to be a fair and concise statement of the facts relevant to the questions presented for determination without argument. Such statements may be followed by a resume of the testimony of each witness relevant to the points presented.

Defendant's statement of facts contains, in addition to page references, the following:

"During voir dire, the prosecutor indicated that the case involved a very violent crime with distasteful and gory evidence, and asked if such evidence would make any of the potential jurors uncomfortable. Marilyn Lee stated that she did not like to hear explicit details on such matters, that such matters bothered her, and that she avoided any such matters in television or newspaper reports. The state asked Ms. Lee, 'so you're saying you'd probably be unable to listen to the evidence in this case?' Her reply was 'yes.'"

Defendant used a peremptory challenge to remove Ms. Lee from the venire. Significantly, and improperly, defendant's statement of facts makes no mention of the following colloquy between defense counsel and Ms. Lee at a later point in the voir dire examination:

"DEFENSE COUNSEL: Mrs. Lee, I would like to ask you some questions about your earlier comments about your—the problems you would have of hearing so-called gory details. How would those details affect your ability to sit as a juror?

"PROSPECTIVE VENIREMAN LEE: The ability—it wouldn't affect the issues—I'm the type of a person that does not like to hear, or read, or see that type of thing. I don't read about it—those things in the newspaper, I mean, any explicit details. I try not to listen to the TV, and I definitely don't watch movies with anything like that that has—

"DEFENSE COUNSEL: So if you would see something in the newspaper or on the TV, you would tend to sort of avoid that and not—not pay attention to that?

"PROSPECTIVE VENIREMAN LEE: Exactly. That may not be the way I should handle it, but that's the way I do handle it.

"DEFENSE COUNSEL: All right. And how would those—if there were to be that type of evidence in this trial, how would you handle that situation?

"PROSPECTIVE VENIREMAN LEE: The best I could.

"DEFENSE COUNSEL: Do you think you would be able to avoid turning away from the evidence in this trial?

"PROSPECTIVE VENIREMAN LEE: Yes, I do think I could do that.

"DEFENSE COUNSEL: Do you think it would affect your decision?

"PROSPECTIVE VENIREMAN LEE: No, I think—I think I would be able to reasonably consider the evidence, regardless of what it was."

■ The qualifications of a prospective juror are not determined conclusively by a single response. They are made on the basis of the entire voir dire examination. *State v. Gilmore*, 681 S.W.2d 934, 944[36] (Mo. banc 1984). This court holds that the trial court did not abuse its discretion in denying defendant's challenge for cause to Ms. Lee. There is no reason to consider whether § 494.480.4, which became effective after the trial of this case, is an independent reason to invalidate defendant's point.

The judgment is affirmed.

### Case No. 19128

Movant's sole point is that he was entitled to relief on his Rule 29.15 motion, and the trial court erred in ruling otherwise, in that movant was denied his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, § 18(a) of the Missouri Constitution, "in that trial counsel abandoned the defense of mental disease or defect precluding criminal responsibility, relying on psychological evaluation reports that were significantly incom-

plete and were replete with internal inconsistencies, thereby causing a reasonably competent attorney to question the accuracy of those evaluations. The motion court denied the Rule 29.15 motion because there was no evidence that the examinations were deficient, even though the motion court refused appellant the opportunity to present such evidence at the hearing."

"Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j). The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made." *State v. Vinson,* 800 S.W.2d 444, 448[8] (Mo. banc 1990).

"To prevail on a claim of ineffective assistance of counsel, movant must demonstrate that his trial counsel failed to show the customary skill and diligence that a reasonably competent attorney would provide and that he was prejudiced due to the deficient performance. To demonstrate prejudice, the movant must show that the attorney error changed the outcome of his trial. The movant must also overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *State v. Shire,* 850 S.W.2d 923, 933[16–19] (Mo. App.1993) (citations omitted).

Movant's amended motion alleged that his trial counsel was ineffective "in that trial counsel did not contest reports of his competency to proceed to trial, nor diligently pursue a viable defense of not guilty of the criminal act alleged by reason of mental disease or defect under Chapter 552, RSMo."

■ For the reasons which follow, this court holds that movant's point has no merit. Far from showing ineffective assistance of counsel with respect to a possible mental disease defense, the record demonstrates that defense counsel diligently investigated the possibility of that defense and properly concluded that it was unavailable.

The four offenses of which movant was convicted were committed on October 4, 1991. The following is a chronology of significant events in the criminal case material to movant's point:

1–24–92—Movant enters pleas of not guilty and not guilty by reason of mental disease or defect. Court orders a mental examination to be conducted by Kenneth J. Burstin, Ph.D.

2–27–92—Dr. Burstin conducts psychological examination of movant.

2–28–92—Dr. Burstin sends to the trial judge a five-page report which contains the following conclusions:

"[Movant] is currently competent to stand trial. He has an understanding of the charges against him and of possible penalties for conviction. So long as questions and explanations are kept simple, and written material is avoided, he should be able to understand and appropriately participate in the proceedings against him. He has the basic ability to communicate relevantly and to cooperate with counsel in the preparation of his defense.

"There is no evidence or assertion that [movant's] behavior at the time of the instant offense was influenced by hallucinations or other manifestations of a mental disease or defect, and his intellect does not appear to be so limited as to preclude the ability to evaluate his behavior. Rather, [movant] contends that his behavior at the time of the events in question was within the context of cocaine intoxication, and this volitional behavior is not considered an exculpating factor. Therefore, it does not appear that [movant] was suffering from a mental disease or defect such that he was unable to evaluate the nature, quality, or wrongfulness of his conduct, or which would have prevented him from conforming his conduct to the requirements of law, at the time of the alleged criminal conduct."

3–13–92—Defense counsel files "Request for a Second Mental Evaluation." The request was granted.

4-1-92—Movant examined by Lester O. Bland, Psy. D, licensed psychologist.

4-21-92—Dr. Bland sends two-page report to defense counsel. The report includes: "I must concur with Dr. Burstin in that I believe [movant] is currently competent to stand trial and that there was no indication of significant mental impairment at the time of the alleged criminal act."

4-22-92—(During jury trial) Movant withdraws plea of not guilty by reason of mental disease or defect.

5-6-93—Movant files amended Rule 29.15 motion.

9-24-93—Evidentiary hearing on Rule 29.15 motion.

During the jury trial, when the plea of not guilty by reason of mental disease was withdrawn, defense counsel informed the court that he sent to Dr. Bland "various material pertinent to [movant]" prior to Dr. Bland's examination. At the post-conviction hearing, defense counsel, called by movant, testified that, based on the opinions of Dr. Bland and Dr. Burstin, he did not feel that he had enough evidence "to back up that claim [of mental disease]."

Defense counsel also testified that his own opinion of movant's mental condition was consistent with the findings of the doctors. He said that movant assisted him in preparing the defense by "discussing the circumstances with me, giving me his history of where he had been immediately prior to the events in question, giving me some personal background on him, and telling me his recollection of what happened." Counsel also testified that he conferred with Dr. Burstin and Dr. Bland and talked with his supervisor and a professional colleague about the contents of the reports.

He further testified: "[Movant] seemed to follow along real well and asked me questions in response to what had happened. His questions were relevant to what was going on in the courtroom and seemed to reflect that he understood what was happening. Prior to the trial, movant seemed to understand what was going on. My concern was never about his competency to proceed. I was convinced he was competent. My concern was whether at the time the alleged crime happened he was under the influence of mental disease or defect such as to preclude responsibility. I didn't know, and that's why I sought out expert opinion and got the two mental examinations. I did not consider requesting a third mental examination. It did not occur to me, based on the reports and again on my observations. I didn't think there was anything there worth pursuing. I felt we were at a dead end as far as that particular defense. I did not feel a mental defense would be successful."

At the postconviction hearing, movant called Mark Altomari, Ph.D, a clinical psychologist specializing in forensic psychology. Rule 29.15(b) requires that a Rule 29.15 motion be "substantially in the form of Criminal Procedure Form 40." Paragraph 9 of Form 40 requires a listing of the names and addresses of the witnesses upon whom movant intends to rely to prove the facts supporting each of the grounds for relief contained in the motion. Dr. Altomari was not so listed.

Under questioning by movant's postconviction counsel, Dr. Altomari testified that he had not examined movant and could not give an opinion "as to either competency or responsibility issues." He testified that he had supervised psychologists and had supervised certified forensic examiners in training. He testified that he had examined movant's Exhibit 1, the report of Dr. Burstin.

There ensued a series of questions by movant's counsel, to which the prosecutor interposed various objections. The court sustained the objections. The unanswered questions were:

"Turning back to the report, how does the evaluation process described therein *differ from what you would have done* if [movant] had been brought to you for evaluation in your private practice? ...

"Looking at the evaluation process done—that underlies Dr. Burstin's report—were there facts reported in the report that would have indicated, perhaps, *a different type of testing* should be done? ...

"In terms of *what you would expect* in a forensic report, how does the report you're holding compare?"[3] (Emphasis added).

Movant's counsel did not make an offer of proof at the postconviction hearing to show what answers the witness would have given if permitted.

On October 8, 1993, several days prior to the entry of judgment on movant's motion, movant filed a "Motion to Submit Offer of Proof," in which postconviction counsel set forth what testimony movant expected to elicit from Dr. Altomari. The motion states that Dr. Altomari was retained by postconviction counsel as an expert witness "for the sole purpose of making a professional assessment of evaluations tendered by two psychologists prior to and during trial." Attached to the motion was the affidavit of Dr. Altomari.

Dr. Altomari's affidavit stated: "I have reviewed the report of Dr. Burstin and the report of Dr. Bland.[4] ... The conclusions stated in the reports of Dr. Burstin and Dr. Bland as to [movant's] competency and responsibility were stated in rather summary fashion.... There is no indication as to how long either examiner spent with the defendant.... There is no indication as to whether [movant's] family, acquaintances, attending physicians, or arresting officers were interviewed in attempting to assess his state of mind at the time of the alleged offense.... The conclusion to be drawn from the foregoing [see footnote 3] is not that Dr. Burstin and Dr. Bland may have performed inadequate evaluations, but rather that the lack of detail contained in their reports regarding the ultimate issues of competency and responsibility should have raised some questions in the mind of a reasonable reader.... A prudent reviewer might have questioned Dr. Burstin and Dr. Bland as to how they arrived at their conclusions."

In its order denying the motion, the trial court made several findings, including the following:

"Trial counsel concluded that there was insufficient evidence to pursue a defense of not guilty by reason of mental disease or defect. Trial counsel reached this conclusion because of the conclusions of the psychologists who examined movant, and because of counsel's observations of movant himself. Trial counsel noted that movant seemed to understand the proceedings and asked questions which were relevant to his defense. The court finds that trial counsel was diligent in exploring the possibility of using such a defense, and abandoned the defense only when he decided it was neither viable nor justified.

"The court finds that trial counsel was diligent in evaluating the psychologists' reports. Trial counsel conferred with each examining psychologist. He also conferred with other attorneys in his office, and formed his own conclusions about movant's competence and responsibility from his interactions with movant. The court finds that trial counsel did everything a competent attorney would do in order to determine movant's mental condition at the time of the trial and the time of the crime. The court finds that trial counsel was not required to have another psychologist critique the performance of the two court-appointed psychologists, in the absence of evidence that the examinations were deficient. The court finds that there was no such evidence in this case."

The motion filed by postconviction counsel on October 8, 1993, made no mention of the unanswered questions which were posed to Dr. Altomari at the postconviction hearing.

■ "In order to present and preserve an offer of proof the questions must be propounded to a witness who is present and has taken the stand. This enables the trial court to rule upon the propriety and admissibility of the evidence, and preserves a record for appellate review." *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205[5] (Mo. banc 1983). An offer of proof

---

3. "For every expert there is an equal and opposite expert." Anon. Cf. Newton's Third Law.

4. The affidavit also stated that Dr. Altomari had reviewed "a discharge summary from [movant's] admission to Fulton State Hospital covering the dates from August 12, 1992, to October 20, 1992." This "discharge summary" has not been filed in this court. The trial took place in April 1992, so this document did not exist when defense counsel represented movant.

must demonstrate the relevancy of the testimony offered, must be specific, and must be definite. *Karashin,* at 205[4].

■ In *Frank v. Envtl. Sanitation Management, Inc.* 687 S.W.2d 876, 883–884[14] (Mo. banc 1985), the court "carved out an exception" to the rule that appellate courts will not review excluded evidence without a specific and definite offer of proof. The court said, 687 S.W.2d at 883–884[14]:

"This exception is very narrow. First, it requires a complete understanding, based on the record, of the excluded testimony. Second, the objection must be to a category of evidence rather than to specific testimony. Third, the record must reveal the evidence would have helped its proponent."

There was no "specific and definite offer of proof" made by movant's postconviction counsel at the motion hearing. It is unnecessary to determine whether the affidavit of Dr. Altomari filed October 8, 1993, could qualify as an offer of proof, belated as it was. The court was not required to believe the affidavit. Nothing in that affidavit, itself hearsay, contained any basis for finding that the performance of defense counsel was deficient and that the attorney error changed the outcome of the trial.

Defense counsel ably represented movant in investigating the availability of a mental disease defense. This court holds that the findings of the trial court are not clearly erroneous and, indeed, are fully supported by the record.

The judgment is affirmed.

SHRUM, C.J. and MONTGOMERY, J., concur.